SUPREME COURT. Clinton General Term, May, 1858. *C. L. Allen, James, Rosekrans* and *Potter*, Justices.

## THE PEOPLE *v.* JOEL W. HOLCOMB and others.

At common law, all warrants in criminal proceedings are required to be under the hand and seal of the magistrate who issued them. Certain statutory exceptions stated by ROSEKRANS, J.

A search warrant, not under seal, is void, and affords no protection to an officer attempting to execute it.

Nor can a search warrant be sustained as valid when directed to "any constable" of the county in which the search is directed to be made, the statute requiring all search warrants to be directed "to the sheriff of the county, or to any constable or marshal of the town or city" in which the stolen property is alleged to be secreted.

The place to be searched must be particularly designated in the search warrant. Where a part of the complaint was recited in the warrant, in which it was stated that the complainant suspected the stolen property was concealed in the stable of C. P., on the east side of the canal, in the village of Whitehall, in said county, known as the "red barn," and then the warrant gave direction to search the places where said property was suspected to be concealed, it was held insufficient, for the reason that though the place mentioned in the complaint was sufficiently designated, the direction given in the warrant was too general, and authorized the search of any suspected place, instead of confining the search to the place so suspected by the complainant.

Whether a search warrant can be executed, or afford protection to an officer, where it shows upon its face that the party who has the property alleged to be stolen is charged with the larceny of it, and no warrant for his arrest accompanies, or is incorporated in the search warrant, *quere?*

Form of an indictment for an assault and battery committed on an officer while engaged in the execution of his office, with a count for riotously and routously resisting the execution of process, and a count for resisting the execution of a search warrant under the *Act of* 1845 (*ch.* 69, § 17.)

CERTIORARI to the Court of Sessions of Washington county. The indictment contained four counts, and was as follows:

*Washington County, ss:*

The jurors of the people of the State of New-York, of the body of the county of Washington, to wit, Ebenezer

McMurray, &c., good and lawful men of the body aforesaid, then and there sworn and charged to inquire for the people of the said body, upon their oath present : That Joel W. Holcomb, James Woodard, Henry Loomis and Charles Pardo, late of Whitehall, in said county of Washington, on the twenty-ninth day of May, in the year of our Lord one thousand eight hundred and fifty-five, at the said town of Whitehall and county of Washington, in and upon one Henry H. Knight, then being one of the constables of said county, in the peace of God and of the said people, then and there being, and in the due execution of his said office, then and there also being, did make an assault, and him, the said Henry H. Knight, then and there did beat, wound and ill treat, and the due execution of his said office, did then and there, with force and arms, resist, hinder and prevent, contrary to the statute in that case made and provided, and against the peace of the people of the State of New-York, and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present : That Florus D. Meacham, Esquire, was a justice of the peace, in and for the county of Washington, at the town of Whitehall, on the said twenty-ninth day of May, in the year of our Lord, one thousand eight hundred and fifty-five, that on the said twenty-ninth day of May, in the year of our Lord, one thousand eight hundred and fifty-five, at said town and county, the said Meacham, as a justice of the peace aforesaid, duly issued a certain process called a search warrant, subscribed with his name, directed to any constable of said county, and commanding them in the name of the people of the State of New-York, to search a certain barn in said town of Whitehall, which was in said warrant particularly described, in the day-time, for certain personal property, in said warrant particularly set forth and described, belonging to one Alwyn Martin and one Moses T. Clough, which property had been stolen and feloniously taken, and was then concealed in said barn, and said stolen property to

bring before said justice of the peace, all of which will, by said warrant, more fully and at large appear, that one Henry H. Knight, then and there, was a constable in and for said county, at Whitehall in said county, that said process was duly delivered to him for execution at the time and place aforesaid, that said constable then and there proceeded to the due execution thereof, and was at and about the searching said barn, in the day-time, for said stolen property, to take the same before said justice, as by said warrant he was commanded; and that on the day and at the place last aforesaid, Joel W. Holcomb, James Woodard, Henry Loomis and Charles Pardo, in and upon the said Henry H. Knight, then and there being in the due execution of said process, did make an assault, and the execution of said process did then and there, with force and arms, maliciously and willfully resist, and him, the said Henry H. Knight, did then and there, from the execution of said process, hinder and prevent, and the said stolen property did then and there, with force and arms, violently and unlawfully, from the custody and possession of him, the said Henry H. Knight, receive and take away, contrary to the statute in that case made and provided, and against the peace of the people of the State of New-York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present: That Joel W. Holcomb, James Woodard, Henry Loomis and Charles Pardo, late of Whitehall in said county, on the twenty-ninth day of May, in the year of our Lord, one thousand eight hundred and fifty-five, at the said town of Whitehall and county of Washington, with force and arms, did unlawfully, riotously and routously assemble together to disturb the peace, and being so assembled together, in and upon one Henry H. Knight, then and there being one of the constables of the said county of Washington, in the due and lawful discharge of the duties of his office as constable of said county being, in the service of a lawful process, to any constable of said county directed, and

The People *v.* Holcomb.

by him then and there had and held for execution as such constable, commanding him to search certain premises in said town and county, for certain stolen property, and the same to bring before the magistrate issuing said process; which place and property was, in said process, particularly described and set forth, said process having been issued by one F. D. Meacham, a justice of the peace in and for said county, at said town of Whitehall, and having due authority and power to issue the same, did make an assault, and riotously and routously him, the said Henry H. Knight, did resist, hinder and obstruct in the discharge of the duties of his office of constable, and the execution of said process, and the place which by said process said Knight was commanded to search, did, with force and arms, unlawfully hinder and prevent from searching, and the said stolen property did prevent and hinder from being taken before the magistrate issuing said process, as by the command thereof said constable was directed.

And the jurors aforesaid, upon their oath aforesaid, do further present: That Joel W. Holcomb, James Woodard, Henry Loomis and Charles Pardo, late of Whitehall, in said county of Washington, on the twenty-ninth day of May, in the year of our Lord, one thousand eight hundred and fifty-five, with force and arms, at said town of Whitehall and county of Washington, the execution of a certain process called a search warrant, in due form of law issued by an officer having full authority and jurisdiction to issue the same and then and there had and held, by one Henry H. Knight, then and there being a constable in and for said county, for execution, did resist, and the execution thereof did then and there prevent, hinder and obstruct, contrary to the statute in that case made and provided, and against the peace of the people of the State of New-York, and their dignity.

JOSEPH POTTER,
*District Attorney.*

The defendants pleaded "not guilty;" and the issue came on to be tried in the Court of Sessions of Washington county, in February, 1856, before the county judge and the justices of the Sessions, with a jury; and the people, to maintain the issue on the part of the prosecution, gave in evidence a certain paper or instrument, purporting to be a warrant, and signed by one F. D. Meacham, a justice of the peace, which instrument is in the words and figures following:

*Washington County, ss:*

To any constable of said county, greeting:

Whereas, Alwyn Martin has made complaint on oath before me, F. D. Meacham, one of the justices of the peace of the said county, that, on the twenty-seventh day of May, one thousand eight hundred and fifty-five, certain personal property of the said Alwyn Martin and Moses T. Clough, to wit, one chestnut colored stallion horse, of the value of two thousand dollars or upwards, was stolen and feloniously taken from the possession of the said Martin and Clough, in the town of Whitehall, in the said county; and that he suspects that Henry Loomis did steal and take the same, as aforesaid, and that the said property is now concealed in the stable of Charles Pardo, on the east side of the canal, in the village of Whitehall, in said county, known as the Red Grocery Barn:

Therefore, the people of the State of New-York command you to search the place where the said property is suspected to be concealed, in the day-time, and that you bring the same before me.

Witness my hand, this twenty-ninth day of May, one thousand eight hundred and fifty-five.

F. D. MEACHAM,<br>*Justice of the Peace.*

The defendants objected to the same being given in evidence, because it was directed to any constable of the county

The People *v.* Holcomb.

of Washington, and not to the sheriff of the said county, nor to any constable or marshal of the town of Whitehall, where the process was issued, and the supposed stolen property was concealed, as required by the statute; and because it commanded the officer to search the place where the said property is suspected to be concealed, and did not require him to search in any particular place, but, on the contrary, was a general warrant, authorizing a search in any place where it might be suspected the property might be; and because the warrant on its face was unauthorized and void. All of which objections were overruled by the court, and the warrant admitted in evidence, and the defendants excepted to each and every of the decisions of the court, overruling each and every of said objections.

Evidence was then given of an attempt by Henry H. Knight, a constable, to execute the warrant, and of forcible resistance by the defendants. The court charged that the warrant was valid; to which the defendants excepted; and the jury found the defendants guilty.

A bill of exceptions having been made and proceedings stayed, a *certiorari* was issued and return made.

*Clough & Sheldon*, for the defendants.

I. The warrant was void: first, it was directed to "any constable of said county." There is no such officer; and the statute is plain that it must be directed to the sheriff of the county, or to the constable of the town, or marshal of the city, &c. ( 2 *R. S.*, 746, § 26; *id.*, 831, § 30, 3*d ed.*; *Russell* v. *Hubbard*, 6 *Barb.*, 654, *and cases there cited.*) Second. The warrant did not particularly describe the place to be searched. This is required by the bill of rights, by the constitution, and by the statute. (1 *R. S.*, 93, § 11; *id.*, 94, § 11, 3*d ed.*; *Const. U. S.*, 4*th amend.*; 2 *R. S.*, 746, §·26; *id.*, 831, § 30, 3*d ed.*) By no grammatical construction can the barn be deemed the place where "the property

is suspected to be concealed." The suspicion applies to Loomis. It is, in fact, a command to search any place where any one suspects the property may be concealed, a general warrant, commanding the officer to search any place, and therefore void.

II. The process being invalid, the defendants were justified in resisting this outrage upon the person and property of Holcomb. This protection extends to third persons. (1 *Chit. Cr. L.*, 60, 61; 1 *Russ. on Cr.*, 618.)

*A. L. McDougall* (District Attorney), for the people.

I. The first objection is trivial. The direction is a compliance with the statute. It is to be directed to the sheriff or to any constable, &c. (2 *R. S.*, 929, 4*th ed.*) The latter was the direction in this case. The object of the direction is to inform the person to be arrested who or what class of officers are authorized to arrest him. That object is satisfied by this direction. (1 *Chit. Cr. L.*, 38; *Mag. Cr. L.*, 458, 459.)

II. The second objection is not less frivolous. 1. The statute requires the place properly to be designated in the warrant. In this case, both were particularly described. The magistrate in the first place described where the property is suspected to be concealed. It then commands the officer to search the place where said property is suspected of being concealed, &c. It is the same as if he had said search " said place," which is the form laid down in *Magistrate's Criminal Law* (*p.* 565). The one expression is as certain as the other. There is no room to doubt the place to be searched. 2. The language of the warrant is a precise transcript of the statute in this respect. (2 *R. S.*, 929, 4*th ed.*) That was the most certain language the revisors could employ. 3. The warrant is a substantial compliance with the statute, and is not therefore void, and will therefore protect the officer, especially against contemners of the law,

its process and officers. (*Rosc. Cr. Ev.*, 620 ; 1 *Hale*, 457, 459, 460 ; 1 *East*, 310.)

*By the Court*, ROSEKRANS, J.—The defendants were indicted for resisting a constable in executing a search warrant, issued by a justice of the peace, in these words :

[ The search warrant was here set forth in the same words as in the statement of this case.]

The acts of the defendants, which were proved, were sufficient to convict them of the offence if the warrant was a legal justification of the constable in making the search, and taking the property. Upon the trial the defendants insisted that the warrant was void : First. Because it was directed " to any constable of the county of Washington," instead of the " sheriff of the county, or a constable of the town of Whitehall;" Second. Because it commanded the officer to search the place where the property was suspected to be concealed, without describing the place ; and, Third. That the warrant was unauthorized. These objections were overruled, and the defendants excepted. The court charged the jury that the warrant was valid, and the defendants excepted to this part of the charge.

The warrant, although it recites a complaint on oath, that a larceny had been committed and that the complainant suspected that Henry Loomis had stolen the property and had secreted it in the stable of Charles Pardo at Whitehall, does not direct the arrest of Loomis but only that the officer should search for the stolen property and bring it before the justice. Had it directed the arrest of the person charged with the offence, it might have been directed to the sheriff of the county or any constable of any town in the county and need not have been under seal. ( 2 *R. S.*, 890, § 3, 4*th ed.*) But search warrants are by statute required to be directed " to the sheriff of the county or to any constable or marshal of the town or city " ( 2 *R. S.*, 929, § 33 ), and by the common law, warrants, in criminal proceedings, are

required to be under the hand and seal of the magistrate who issues them. ( 4 *Bl. Com.*, 291 ; 2 *Hawk.*, 85, 136 ; 4 *Burns' Justice*, 393, 394.) *In Beekman* v. *Traver* ( 20 *Wend.*, 68 ) the court say that the word "warrant" implies that the process is under the hand and seal of the magistrate, and that it would not be a warrant in the sense of the law unless it was sealed. The same doctrine is held in North Carolina, ( *Welch* v. *Scott*, 5 *Ire.*, 72 ; *State* v. *Woolsey*, 11 *ib.*, 242 ), in Maine, ( *State* v. *Drake*, 36 *Maine*, [ 1 *Heath* ] 366 ; *State* v. *Coyle*, 33 *Maine*, [ 3 *Red.*] 427 ; *State* v. *McNally*, 34 *id.*, 210 ). The search warrant in *Bell* v. *Clapp* ( 10 *J. R.*, 263 ) was under the hand and seal of the justice. Our statutes have dispensed with seals to process in various cases. Warrants issued by justices of the peace in civil cases " may be under or without seal." ( 2 *R. S.*, 453, § 153.) Warrants issued for the arrest and examination of offenders may be with or without seal. ( 2 *R. S.*, 890, § 3.) Also warrants under the statute entitled " Of proceedings to prevent the commission of crimes." ( 2 *R. S.*, 888, § 3.) Warrants issued upon judgments of Courts of Special Sessions may be only "under the hands of the magistrates who held the court." ( 2 *R. S.*, 901, § 36.) Also warrants issued by trustees of school districts annexed to tax or rate bills may be under the hands of the trustees, and it is expressly provided that they need not affix their seals. ( 1 *R. S.*, 902, § 144.) But the statutes directing the issuing of a warrant against the putative father of a bastard child ( 2 *R. S.*, 57, § 6) and the statute entitled " Of betting and gaming" (1 *R. S.*, 75, § 24) and the statute authorizing the issuing of search warrants for stolen property (2 *R. S.*, 929, § 32), merely direct or authorise the issuing of warrants, without specifying whether they shall be with or without seal. As the common law required a warrant to be under seal, and the legislature in reference to warrants authorized to be issued in various cases, both civil and criminal, have expressly provided that they may be issued without the seal of the magistrate or offi-

The People *v.* Holcomb.

cer, the rule of *expressio unius est exclusio alterius* requires that, in those cases in which warrants are not expressly authorized to be issued without seal, they should be issued under seal. (*Bouv. L. Dic.*, title " *Search Warrant.*") If this position is correct, the warrant under which the officer was acting when he was assaulted and resisted by the defendants was void upon its face and afforded him no protection; the resistance of the defendants was lawful and the ruling of the Court of Sessions that the warrant was valid and that such resistance was unlawful, was erroneous. (*Sanford* v. *Nichols*, 13 *Mass.*, 288.

We think, too, that the objection that the warrant did not conform to the statute in its direction was well taken, and that it was for that reason void upon its face. The statute declares that " such warrant shall be directed to the sheriff of the county, or any constable or marshal of the town or city." The warrant issued to the constable who was resisted was directed "to any constable of said county " (Washington). It is clear that a warrant can only be executed by the officer to whom it is directed; and in the hands of any other person or officer than one of those to whom its execution is by law intrusted it is of no validity. There is no such officer as a " constable of the county." Constables are town officers. But perhaps the reasonable construction of the direction of the warrant is, " to any constable of any town in the county of Washington." If so, it is unauthorized. The statute contemplates that a search warrant should only be executed by the sheriff of the county, or a constable or marshal of the town or city in which the stolen property is alleged to be secreted. To direct it to any other officer is a violation of the statute. The direction of a warrant is a material part of it. (*Russel* v. *Hubbard*, 6 *Barb.*, 656, *and authorities there cited;* 1 *Chit. Cr. L.*, 48.) In *King* v. *Weir* (1 *Barn. & Cress.*, 288), Barley, J., says: "It is of great consequence that magistrates should be careful to direct their warrants in such manner that the parties to be

affected by them may know that the persons bearing them are authorized to execute them;" and Allen, J., says, in *Russell* v. *Hubbard* (*supra*), "a delivery to a proper officer is not the direction required by law." Hawkins says : " If a warrant is generally directed to all constables, no one can execute it out of his own precinct." Courts should construe statutes in relation to search warrants strictly, and see that the specific directions of those statutes are rigidly followed. A search for and seizure of property, not made in the cases and according to the exact mode prescribed by statute, is an unreasonable search and seizure, the right to be secure against which should not be violated. (*Bill of Rights*, 2 R. S., 302, § 11 ; *Const. U. S., amend. art* 4.)

We think, too, that the warrant is void upon its face, in not designating particularly the place to be searched. It stated, in the part reciting the complaint, that the complainant " suspects that the stolen property is concealed in the stable of Charles Pardo, on the east side of the canal, in the village of Whitehall in said county, known as the red barn." This designation of the place would be sufficiently specific if the direction to search was confined to that place, either expressly, by repeating it, as was done in the warrant in *Bell* v. *Clapp* (10 *John.*, 263), or by reference, as in the case of *Commonwealth* v. *Dana* (2 *Metc.*, 331, *note* ) and in *Sanford* v. *Nichols* (13 *Mass.*, 386). But the direction is not to search the said place, which would limit the search to Pardo's barn before described. The constable is directed " to search the place where the said property is suspected to be concealed." This direction, if constitutional and legal, would authorize search in any other place where the officer or any other person might suspect the property to be concealed, It is a general warrant for a search of suspected places. The words, " the said property," are a sufficient designation, by reference, of the property to be searched for, but the place where the search is directed to be made is not designated with sufficient particularity to comply with the

requirements of the constitution and statute, It is no answer to this objection that the officer may have construed the warrant as only authorizing a search at Pardo's barn, nor that the search which he made and which the defendants resisted was made at that place. The question is not, what construction did or might the officer put upon the warrant, nor whether his acts were such as would have been legal and justifiable under a warrant which would have been authorized by the complaint, but it is simply whether the warrant, according to the legal construction of its language, confines the search to the particular place designated in its reciting part as the place of suspected concealment of the property. We think it does not, and that nothing should be be left to inference or intendment in that particular. The place of search mentioned in the reciting of the warrant should either have been repeated in its mandatory part or have been designated by reference to it, as " the said place where the said property is, as before mentioned, suspected to be concealed."

It is also questionable whether a search warrant can be executed, or afford protection to an officer, where it shows upon its face that the party who has the property alleged to be stolen is charged with the larceny of it, and no warrant for his arrest accompanies or is incorporated in the search warrant. The complaint recited in the warrant disclosed that a criminal offence had been committed by Loomis as clearly as it did the place of concealment of the stolen property. Both were founded merely upon suspicion, and without a disclosure of the facts upon which the suspicion was based, the justice should not have been satisfied of the existence of either. The reasonable grounds of suspicion should have been set forth. This, however, did not affect the officer's right to execute the process. But if the larceny was satisfactorily made out, it was the duty of the justice to issue a warrant for the arrest of Loomis. (2 *R. S.*, 890 § 3), and when the property alleged to be stolen was taken

by the constable, he was required to keep it subject to the order of the magistrate who issued the warrant, and who should take the examination of the defendants, and such magistrate, upon satisfactory proof of the title of the owner, is authorized to order the property delivered up to such owner (2 *R. S.*, 930, §§ 37, 38); and if stolen property shall come into the hands of a justice of the peace, upon like proof he may order it delivered to the owner (*id.*, § 39); but it was never contemplated that a search warrant should be issued to obtain possession of property alleged to have been stolen, and when brought to the justice that he should order it to be delivered over to the person claiming to be the owner, upon *ex parte* proof of his title. No freeman can be thus dispossessed of property. He is entitled to a day in court, and a hearing in some tribunal, civil or criminal, before his possession is disturbed. An ample civil remedy is provided for the delivery of property held under circumstances such as were disclosed by the complaint in the case. His proceedings under his complaint and warrant were anomalous and unprecedented. They seem to have been designed by him to peform the office of the old writ of replevin, or the proceedings under the Code of Procedure for the claim and delivery of personal property, without subjecting him to the inconvenience of giving security for the return of the property, if return thereof should be adjudged, and without giving the defendant Loomis, who was charged with the larceny, an opportunity to establish his title or right to the possession of the property, or to defend his reputation against the serious charge preferred against him. No warrant was issued for his arrest, nor was he arrested for the alleged larceny, although he was present at Pardo's stable and resisted the officer in his attempts to take the property. No notice was given him, or could be legally given him, under the process, of the time when or the place where the proof of the complainant's title to the property was to be furnished to the magistrate. It was probably not intended

The People *v.* Holcomb.

that he should have had such notice. This *novel disseizin* might not have worked as it was designed had the notice been given. At common law it was necessary that a search warrant should command that the goods found, together with the party in whose custody they should be taken, should be brought before the magistrate, to the end that upon examination of the facts, the goods and the prisoner might be disposed of according to law. (2 *Hale,* 150; 15 *Petersd. Abr.,* 361, *margin and note.*) The revisors make this citation from Hale in their notes to the section of the statute authorizing a search warrant; and also 3 *Dickinson's Justice,* 505 (3 *R. S.,* 838, 2*d ed.*); also, to the same effect, *Bouvier's Law Dictionary,* title "search warrant," and authorities cited. (1 *Chit. Cr. L.,* 64.)

For these reasons the judgment of the Sessions should be reversed and the defendants discharged.