Per Curiam.

The matter set forth in the plea is a justification ■if the trespass. The search warrant was founded on oath, and the information stated that one hundred barrels of flour had been stolen from the wharf, in the first ward, by Richard and Isaac Jaques, and that the same, or a part thereof, was concealed in a cellar of Gideon Jaques. The plea then states that the warrant, being under the hand and seal of the magistrate, (who was one of the special justices of the city of New-York, an officer created by a public statute,) and being directed to the constables and marshals, authorized and required them to enter the said cellar, in the daytime, and search for the flour, and to bring it, together with the said Gideon, or the person in whose custody it might be found, before the justice ; that in pursuance of the warrant, the defendants, the one being a constable and the other a marshal, did go to the cellar, which was part and parcel of the dwelling-house of the plaintiff, and, after being refused entrance, did open the door by force, and seize the flour in as peaceable a manner as possible. This, then, was a valid warrant duly executed by these officers. The warrant had all the essential qualities of a legal warrant. It was founded on oath, and was specific as to place and object, and the stolen goods were taken, and taken in as peaceable a manner as the nature of the case admitted.
In Entick v. Carrington, (2 Wils. 275. 11 St. Tr. 313—316.) Lord Camden admitted a search warrant, so well guarded, to be a lawful authority. The warrant did not state in whom the property of the flour resided, nor was this essential to its validity: a person may even be indicted and convicted of stealing the goods of a person unknown. Nor did it affect the legality of the warrant that it directed the officer to bring Jaques, to whom the cellar belonged, or the person in whose custody the flour might be found. It was impossible for any warrant to be more explicit and particular; and it would, probably, have been the duty of the officer to have arrested any person in possession of the stolen goods at the place designated, without any directions in the warrant, and to have carried him be - fore the justice for examination.
Sir Mathew Hals, in one part of his treatise, (H. P. C. v. 2. 114. 116, 117.) denies to the officer the right of breaking open the door, on a warrant to search for stolen goods. But he, afterwards, (Ibid. 151.) admits this power in the officer, if the door be shut, and if upon demand it is refused to be opened. This ¡ast opinion is founded on the better reason, for search warrants are often indispensable to the- detection of crimes; and. they *270 would be of little or no efficacy without this power attached to *^em- All the checks which the English law, and which even the constitution of the United States, have imposed upon the operation «f these search warrants, and with the manifestation of a strong jealousy of the abuses incident to them, would scarcely have been thought of, or have been deemed necessary, if the warrant did not communicate the power of opening the outer door of a house. In the case of Entick v. Carrington, it was asserted by the counsel for the defendant, that on a search warrant to search for stolen goods, the officer might break open doors, &c. ánd this power was not questioned by the other side, nor by Lord Camden in the able and elaborate view which he took of the legality and effect of these warrants.
The defendants are, accordingly, entitled to judgment upon the demurrers.
Judgment for the defendants.