528 P.2d 656
**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Juan Lorenzo BACA, Defendant-Appellant.**
**No. 1214.**

Court of Appeals of New Mexico.
Aug. 28, 1974.
Rehearing Denied Sept. 18, 1974.
Certiorari Denied Oct. 31, 1974.

Louis G. Stewart, Jr., Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., F. Scott MacGillivray, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HERNANDEZ, Judge.

The defendant appeals from a jury conviction of the unlawful possession of a controlled substance (heroin) contrary to Section 54–11–23, N.M.S.A.1953 (Repl.Vol. 8, pt. 2, 1973 Supp.). He alleges four counts of error which are set forth in the order considered.

We affirm.

On July 13, 1972 at about 9:30 a. m., several city, state and federal officers went to the home of the defendant with a search warrant authorizing them to search the home and person of the defendant for heroin. State Police Officer Martinez knocked on the front door several times and said, in a loud voice, that he was a police officer and that he was there for the purpose of executing a search warrant. City Police Officer Cordova, who was also at the front door, testified that he, too, knocked on the door and announced several times that they were police officers. Cordova also testified that while they were waiting for a response he could hear "some kind of commotion" inside the house. After waiting between 30 and 45 seconds the officers decided to enter. Officer Martinez tried the door and found it locked so he then proceeded to kick it open. As the officers entered they saw the defendant running into the living room dressed in his underclothes. Martinez and Cordova again advised the defendant that they were there for the purpose of searching the house. Cordova then went out to the police car and got a copy of the search warrant and came back in and gave it to the defendant. Two other adults, Mrs. Baca and Herman Padilla, and the defendant's young children were in the house. Mrs. Baca and one child were in the master bedroom and Padilla was in another bedroom. In a bathroom, the only entrance to which was through the master bedroom, the officers found one "cap" of heroin, a tinfoil wrapper, a "cooker" or spoon and a bloody Kleenex. In the bedroom occupied by Padilla the officers found two "cookers," needle, syringes, eyedroppers and a marijuana cigarette in his coat, and some tinfoil. Traces of heroin were found on the tinfoil and the paraphernalia used for preparing and injecting heroin.

Defendant's first point is that the trial court erred in denying his motion to suppress the heroin seized because it was obtained through an unreasonable search and seizure in violation of his constitutional rights. Specifically, defendant contends that the officers did not wait a reasonable period of time before forcing their way into his home.

Article II, § 10 of the Constitution of New Mexico provides in part that: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and . . . " New Mexico has neither statute nor decision stating what is "unreasonable" in circumstances such as these. Accordingly, we are obliged to look to the common law to determine what procedure must be followed prior to a forced entry. Section 21–3–3, N.M.S.A.1953 (Repl. Vol. 4). We recognize that some uncertainty exists as to common law requirements. See Blakey, 112 U.Pa.L.Rev. 499 (1964). Our view is that an officer, prior to forcible entry, must give notice of authority and purpose, and be denied admittance. This is a general standard. Noncompliance with this standard is justified if exigent circum-

stances exist. Examples, but not a catalogue, of exigent circumstances are: (1) when, prior to entry, officers in good faith believe that they or someone within are in peril of bodily harm; or (2) when prior to entry, officers in good faith believe that the person to be arrested is fleeing or attempting to destroy evidence. These standards apply both to an officer executing a search warrant and to an officer making an arrest on probable cause. People v. Honea, 257 Cal.App.2d 259, 64 Cal. Rptr. 628 (1967), cert. denied, 392 U.S. 941, 88 S.Ct. 2320, 20 L.Ed.2d 1401 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); People v. Maddox, 46 Cal.2d 301, 294 P.2d 6 (1956), cert. denied, 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956). The reasonableness of each search and seizure is to be decided upon its own facts and circumstances in light of these general standards. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

If there are exigent circumstances they must be known to the officers beforehand. That is to say, an unreasonable search and seizure cannot be made reasonable by what is discovered. United States ex rel. Manduchi v. Tracy, 350 F.2d 658 (3rd Cir. 1965). Defendant's claim is that the police did not wait a reasonable time before their forcible entry. The shortness of the delay, no more than 45 seconds, is asserted to be constitutionally unreasonable. The unreasonableness claimed is that defendant was not given a reasonable opportunity to surrender his privacy voluntarily. In this case the affidavit for the search warrant establishes a good faith belief on the part of the officers that heroin was to be found on the premises. The officers knocked on the door, identified themselves as police officers, and announced their purpose. While awaiting a response they heard "some kind of commotion." Under these circumstances the officers were justified in not

delaying further. State v. Dudgeon, 13 Ariz.App. 464, 477 P.2d 750 (1970); People v. Honea, supra.

It is our opinion that under all of the circumstances of this case the defendant's constitutional right to freedom from unreasonable search and seizure was not violated.

Defendant's second point is that the court erred in denying the motion to suppress the heroin seized because the search warrant was illegally executed in that the return of service and inventory failed to comply with the Rules of Criminal Procedure. Rule 17(e), N.M.R.Cr.P.; § 41–23–17(e), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.), provides:

"(e) *Return*. The return shall be made promptly and in all events within three [3] days after execution of the warrant. The return shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one [1] credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be signed by the officer and the person or persons in whose presence the inventory was taken. The court shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant."

The return of the search warrant was made by Officer Cordova and recited that it had been received on July 13, 1972 and that on the same day at 9:30 a. m. the premises described in the warrant had been searched. It went on to recite that a copy of the warrant together with a receipt for the items seized had been left with the defendant. It then listed the various items taken. It further stated that the inventory was made in the presence of "Bob Wademan" and "Steve Bissegger." It was

signed and attested to on July 17, 1972. The form that was used had a section entitled "Return Where Property Not Seized" and then recited "[a]fter careful search, I could not find at the place or on the person described the property described in this Warrant." Officer Cordova had also signed this section. Special Agent Wademan testified that he had been present when Officer Cordova had filled out part of the return, but he could not remember if he had been there while all of it was completed and that he had not signed the return and that his name had been misspelled. Special Agent Bissegger testified that he saw Officer Cordova writing on a copy of the search warrant and that he "looked over his shoulder for a brief moment." Officer Cordova testified that he had made and signed the return and had given a copy to Mrs. Baca. He also admitted that he had signed and dated the section entitled "Return Where Property Not Seized" but that property had been seized. Officer Cordova had been one of the applicants for the search warrant.

█ This court in State v. Perea, 85 N. M. 505, 513 P.2d 1287 (Ct.App.1973) decided that absent a showing of prejudice it would not set aside an otherwise valid search warrant because of defects in the return. We stated: "Those matters of procedure relating to the return of a search warrant have consistently been held to be ministerial acts which, even if defective or erroneous, do not require a search warrant to be held invalid unless prejudice is shown." The defendant does not allege nor does the record indicate that he was prejudiced in any way by this return; therefore, it was not error for the trial court to admit the evidence seized pursuant to this warrant.

█ Defendant's third point is that the trial court erred in refusing to dismiss the indictment because 18 to 21 year olds were systematically excluded from the grand jury which indicted him. State v. Chavez (Ct.App.) 526 P.2d 219, decided August 21, 1974; see State v. Barnett, 85 N.M. 404, 512 P.2d 977 (Ct.App.1973). The ages of the members of the grand jury do not appear in the record. Furthermore, defendant made no showing of the systematic exclusion of 18 to 21 year olds. Consequently, this point will not be considered.

Defendant's fourth point is that the evidence was insufficient to sustain the conviction. The rules we must follow in considering this point are well established:

" . . . This court's evaluation of the evidence is limited to a determination of whether or not it substantially supports the verdict, and in making this determination we view the evidence in the light most favorable to the State, resolving all conflicts and indulging all reasonable inferences in favor of the verdict." State v. Favela, 79 N.M. 490, 444 P.2d 1001 (Ct.App.1968).

"[I]n order to sustain a conviction of possession of narcotics, it must be shown that the defendant had either physical or constructive possession, coupled with the knowledge of the presence and narcotic character of the substance. . . . to show such knowing possession the conduct and behavior of the parties, admissions or contradictory statements and explanations are frequently sufficient. . . . Also, possession and knowledge that the object is a narcotic drug can be proven circumstantially." State v. Giddings, 67 N.M. 87, 352 P.2d 1003 (1960); also see State v. Bauske (Ct.App.) 525 P.2d 411, filed July 31, 1974.

"Where one has exclusive possession of a home or apartment in which narcotics are found, it may be inferred, even in the absence of other incriminating evidence, that such person knew of the presence of the narcotics and had control of them."

But where a person is

" . . . not in exclusive possession of the premises, it may not be inferred that he knew of the presence of the narcotics and had control of them, unless there are

**16**

other incriminating statements or circumstances tending to buttress such inference." Evans v. United States, 257 F.2d 121 (9th Cir. 1958).

Viewing the evidence in a light most favorable to the State, it shows the following relating to the defendant's knowledge and possession of the heroin: (1) the heroin was found in the home of the defendant in the bathroom of the master bedroom usually occupied by defendant and his wife; (2) the only entrance to that bathroom was through the master bedroom; (3) defendant's wife was in the master bedroom dressed in pajamas when the officers entered; (4) defendant, according to his own testimony, was a former heroin addict and had for the last three years been undergoing methadone treatments at a drug treatment center; (5) defendant testified that he took methadone daily; and (6) the wife testified she had never seen the heroin and other items before and didn't know what they were used for.

■ Defendant claims the above evidence is circumstantial and fails to exclude every reasonable hypothesis except that of guilt. That issue was submitted to and decided by the jury. State v. Duran (Ct. App.) 526 P.2d 188, decided August 14, 1974. The appellate issue is whether there is substantial evidence of defendant's possession of the heroin. Even though the defendant did not have exclusive possession of the premises it is our opinion that these circumstances, statements and defendant's admission of former addiction are substantial evidence of his constructive knowledge and possession of the heroin. State v. Montoya, 85 N.M. 126, 509 P.2d 893 (Ct.App.1973).

The conviction and sentence are affirmed.

It is so ordered.

LOPEZ, J., concurs.

WOOD C. J., concurs in the result only.