870 P.2d 103

STATE of New Mexico, Plaintiff–
Respondent,

v.

Lyonal Ray ATTAWAY, Defendant–
Petitioner.

No. 20540.

Supreme Court of New Mexico.

Feb. 2, 1994.

Sammy J. Quintana, Chief Public Defender, and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-petitioner.

Tom Udall, Atty. Gen., and Elizabeth Blaisdell, Asst. Atty. Gen., Santa Fe, for plaintiff-respondent.

## OPINION

RANSOM, Chief Justice.

We issued a writ of certiorari to the Court of Appeals to review an opinion of that Court sanctioning forcible police entry pursuant to a warrant within ten to fifteen seconds after the executing officer announced his authority and purpose. *See State v. Attaway*, 114 N.M. 83, 835 P.2d 81 (Ct.App.1992). In this opinion, we discuss the standard by which we

review a district court's determination that exigent circumstances were present, examine the basis for the "knock and announce" rule under federal and state law, and review the state and federal constitutional arguments asserted below.[1] We affirm.

*Facts.* On January 5, 1990, Clovis Police Department Detective Robert Littlejohn requested SWAT team assistance to execute arrest and search warrants on Lyonal Attaway. The search warrant authorized the search of Attaway's residence for drugs, drug paraphernalia, and weapons. Littlejohn briefed the SWAT team sometime prior to the operation. At 6:00 Saturday morning, January 6, the SWAT team approached the front door to the Attaway home with the warrants. Officer Wayne Atchley opened the storm door to the house, knocked on the inner door, and announced both his purpose and authority. The officers testified at a suppression hearing that they noticed a light on in the front of the house. After approximately ten to fifteen seconds passed without response, the officers forcibly breached the front door and set off a diversionary device inside the house. The officers apprehended a woman, later identified as Attaway's spouse, as she fled from the front part of the house. The officers discovered and apprehended Attaway in his bedroom. Pursuant to the arrest and subsequent search, the officers seized from the house several weapons, including a submachine gun and a sawed-off shotgun, methamphetamines, drug paraphernalia, and a videocassette recording.

Attaway moved to suppress all the evidence seized. He contended that the officers failed to comply with the knock-and-announce rule and that this failure rendered the search unreasonable under the United States and New Mexico constitutions. *See* U.S. Const. amend. IV; N.M. Const. art. II, § 10. The trial court denied the motion and Attaway was convicted on one count of distribution of a controlled substance under NMSA 1978, Section 30-31-22(A)(2) (Repl.

1. The opinion of the Court of Appeals does not articulate the constitutional predicate for its analysis. At the suppression hearing, both the trial court and the defendant relied on *State v. Baca*, 87 N.M. 12, 528 P.2d 656 (Ct.App.) (expli-

cation of rule of announcement and exceptions based on exigent circumstances), *cert. denied*, 87 N.M. 5, 528 P.2d 649 (1974), and on relevant Fourth Amendment jurisprudence.

Pamp.1989) and one count of possession of a controlled substance under NMSA 1978, Section 30–31–23(B)(4) (Repl.Pamp.1989). The Court of Appeals affirmed and Attaway petitioned this Court for a writ of certiorari.

*Standard for reviewing determination of exigent circumstances.* In *State v. Sanchez,* 88 N.M. 402, 540 P.2d 1291 (1975), this Court held that a district court's determination of exigent circumstances was a question of fact, subject to the deferential substantial evidence standard of review:

> The questions of "good faith belief" and "exigent circumstances" are questions of fact for the trial court to determine, and the findings of the trial court in these regards are entitled to be accorded the same weight and given the same consideration as is generally accorded a trial court's findings by appellate courts. Substantial evidence is the measure of proof, or the quality and quantity of the evidence, required to support the findings of the trial court.

88 N.M. at 403, 540 P.2d at 1292 (citations omitted). In the Court of Appeals, Attaway contended that review of the trial court's exigency determination should not be simply one of substantial evidence. The Court of Appeals appears to have agreed, *see* 114 N.M. at 86, 835 P.2d at 84, but offered no rationale for its conclusion. We likewise agree and offer the following rationale.

■ —*Fact-finding.* Initially, the trial court must establish the historical facts that animate the transaction to be evaluated. The court performs this fact-finding role by reciting events and assessing the credibility of the testimony offered. This component of the analysis is purely factual, and a trial court is to be given wide latitude in determining that an historical fact has been proven. We review these purely factual assessments to determine if the fact-finder's conclusion is supported in the record by substantial evidence. *See State v. Bloom,* 90 N.M. 192, 194, 561 P.2d 465, 467 (1977) (stating that appellate court must limit itself "to a consideration of whether the evidence substantially support[s] the trial court's finding").

■ —*Application of law to the facts, the mixed question of law and fact.* As to review of the trial court's application of law to the facts in its decision-making process, we find most useful the analysis in the oft-cited case of *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). There, the court invoked principles of appellate review and erected a framework, based on policy considerations, for determining whether a mixed question is to be reviewed de novo or under a more deferential standard:

> The appropriate standard of review for a district judge's application of law to fact may be determined, in our view, by reference to the sound principles which underlie the settled rules of appellate review.... If the concerns of judicial administration—efficiency, accuracy, and precedential weight—make it more appropriate for a district judge to determine whether the established facts fall within the relevant legal definition, we should subject his determination to deferential, clearly erroneous review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the district judge's finding to de novo review.... [T]he pivotal question is do the concerns of judicial administration favor the district court or ... the appellate court.
>
> ....
>
> If application of the rule of law to the facts requires an inquiry that is "essentially factual[ ]" ...—one that is founded "on the application of the fact-finding tribunal's experience with the mainsprings of human conduct[ ]" ...—the concerns of judicial administration will favor the district court, and the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard. If, on the other hand, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Id.* at 1202 (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 288, 289–90 n. 19, 102 S.Ct. 1781, 1789, 1790–91 n. 19, 72 L.Ed.2d 66 (1982); *Commissioner v. Duberstein,* 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960)).

The court identified two interests behind the deferential standard applied to questions of fact. First, by assigning primary responsibility for resolving factual disputes to the court in the superior position—the trial court—the risk of judicial error is minimized. *McConney,* 728 F.2d at 1201. Second, the deferential standard relieves the appellate court "of the burden of a full-scale independent review and evaluation of the evidence." *Id.* In comparison, with respect to de novo review, appellate judges are better able to concentrate their resources on legal questions because they are free from the time-consuming process of hearing evidence. *Id.* In addition, the "judgment of at least three members of an appellate panel is brought to bear on every case" and the "collaborative, deliberative process of appellate courts reduces the risk of judicial error on questions of law." *Id.* The court observed that the binding nature of an appellate ruling, contrasted with the limited force of a factual determination, militates in favor of concentrating combined appellate resources on the issue to ensure the correctness of the legal result. *Id.*

The court applied that methodology to conclude that the mixed question of exigent circumstances should be subject to de novo review as a question of law. *Id.* at 1205. According to the court, deciding whether the facts present exigencies "goes beyond the historical facts." *Id.* "The mixed question of exigency is rooted in constitutional principles and policies. . . . [I]ts resolution requires us to consider abstract legal doctrines, to weigh underlying policy considerations, and to balance competing legal interests." *Id.* (footnotes omitted). We likewise have applied de novo review to threshold constitutional issues such as the voluntariness of confessions, *see Aguilar v. State,* 106 N.M. 798, 799, 751 P.2d 178, 179 (1988), and to the validity of search warrants, *see State v. Sne-*

*deker,* 99 N.M. 286, 290, 657 P.2d 613, 617 (1982).

■ The myriad rules, exceptions, and exceptions to exceptions that flourish in the jurisprudence of search and seizure are often no more than factual manifestations of the constitutional requirement that searches and seizures be reasonable. The rules and tests, based as they are on careful balancing of the underlying constitutional values, reflect the efforts of appellate judges to establish objective standards to measure and inform law enforcement practices. In this sense, none of the rules or their exceptions is talismanic. Rather, each is a proxy for reasonableness, generally applicable, but inherently factual. As the court in *McConney* observed, "[t]he essential and difficult question raised by this balancing is how much risk police officers can reasonably be expected to assume before disregarding the rules society has adopted to otherwise circumscribe the exercise of their considerable discretionary authority in carrying out their vital law enforcement duties." 728 F.2d at 1205. This question is one that extends beyond fact-finding and implicates an assessment of broader legal policies that the New Mexico Constitution entrusts to the reasoned judgment of the appellate courts of this state. *See* N.M. Const. art. VI, §§ 1, 2, 28, 29.

■ When, as here, "the relevant legal principle can be given meaning only through its application to the particular circumstances of a case," an appellate court is "reluctant to give the trier of fact's conclusions presumptive force and, in so doing, strip . . . [an] appellate court of its primary function as an expositor of law." *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985) (citing other factors). It is the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context and we can discharge that duty only through meaningful review of lower court determinations. Thus, we conclude that the mixed question involved in determining exigency lies closest in proximity to a conclusion of law, and hold that such determinations are

to be reviewed de novo.[2] *See McConney*, 728 F.2d at 1203 (stating that factors favoring de novo review are most predominate when the mixed question implicates constitutional rights). To the extent that *State v. Sanchez* is inconsistent with this opinion, it is overruled.

*The rule of announcement and forced entry.—Common law beginnings and acceptance in the federal and state courts.* Commentators and courts have traced the rule of announcement to early common-law decisions describing the legal limitations on the execution of civil process. *See, e.g.*, G. Robert Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California*, 112 U.Pa.L.Rev. 499, 500–08 (1964); Michael R. Sonnenreich & Stanley Ebner, *No–Knock and Nonsense, An Alleged Constitutional Problem*, 44 St. John's L.Rev. 626, 627–29 (1970); *Ker v. California*, 374 U.S. 23, 47–48, 83 S.Ct. 1623, 1636–1637, 10 L.Ed.2d 726 (1963) (Brennan, J., concurring in part and dissenting in part); *Miller v. United States*, 357 U.S. 301, 307–09, 78 S.Ct. 1190, 1194–96, 2 L.Ed.2d 1332 (1958); *Accarino v. United States*, 179 F.2d 456, 460–64 (D.C.Cir.1949); *Commonwealth v. Cundriff*, 382 Mass. 137, 415 N.E.2d 172, 174–78 (1980) (rule in context of arrest warrant), *cert. denied*, 451 U.S. 973, 101 S.Ct. 2054, 68 L.Ed.2d 353 (1981); *State v. Parker*, 283

Minn. 127, 166 N.W.2d 347, 350 (1969). The rule of announcement first was articulated in that context in *Semayne's Case*, 77 Eng.Rep. 194 (K.B.1603):

> In all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors....

*Id.* at 195 (footnotes omitted).

The rule of *Semayne's Case* was followed by early English and American courts in cases involving the execution of an arrest warrant. *See* Sonnenreich & Ebner, *supra*, at 629 (discussing cases). There was, however, little discussion in the early cases of the rule's applicability to forcible entry pursuant to a search warrant.[3] *See* Blakey, *supra*, at 503–08. The first American opinion to discuss the rule in the context of a search warrant was *Bell v. Clapp*, 10 Johns. 263 (N.Y.Sup.Ct.1813). Although announcement was not at issue in *Bell* because the officers did announce their identity and purpose, the court affirmed the right of the officers, upon due demand, to break and enter. *Id.* at 265–66. Since *Bell*, many states have codified the rule of announcement as part of state search and seizure practice[4] and the rule has be-

**2.** While we require findings of fact and conclusions of law in civil actions tried to the court, we have no such requirement, civil or criminal, for rulings on motions to suppress. Thus, in most cases, an appellate court is presented only with a conclusion that the search was reasonable or unreasonable, often articulated in shorthand (*e.g.*, exigent circumstances or noncompliance with the rule of announcement). The interests of judicial administration, however, require de novo review of the trial court's determination of exigency. While it would be helpful for the trial court to enter findings of fact and conclusions of law in suppression hearings, the failure to do so will not preclude de novo review.

**3.** We recognize that our legal tradition often has drawn a sharp distinction between arrest and search and seizure. *See* Blakey, *supra*, at 511 n. 89 (discussing historical roots of distinction). We do not, however, rule on the soundness of this distinction in this opinion.

**4.** The state statutes typically establish only the right, upon due demand, of officers to enter forcibly. Few profess to codify the common-law

exceptions to the rule. Those authorizing forcible entry after notice include: Ala.Code § 15–5–9 (1982); Alaska Stat. § 12.35.040 (1990); Ariz. Rev.Stat.Ann. § 13–3916 (1989); Cal. Penal Code § 1531 (West 1982); D.C.Code Ann. § 25–129(g) (1991) (searches for alcohol), § 33–565(g) (1993) (searches for narcotics); Fla.Stat. § 933.09 (1991); Ga.Code Ann. § 17–5–27 (Harrison 1990); Haw.Rev.Stat. § 803–37 (1985); Idaho Code §§ 19–4409, 4410 (1987); Ind.Code Ann. § 35–33–5–7 (Burns 1985); Iowa Code § 808.6 (1991); Ky.Rev.Stat.Ann. § 70.077 (execution of process for recovery of property), § 70.-078 (arrest) (1980); Mich.Comp. Laws Ann. § 780.656 (West 1982); Neb.Rev.Stat. § 29–411 (1989); Nev.Rev.Stat. § 179.055 (1991); N.Y.Crim.Proc.Law. § 690.50 (Consol.1986); N.C.Gen.Stat. § 15A–251 (1988); N.D.Cent. Code § 29–29–08 (1991); Ohio Rev.Code Ann. § 2935.12 (Baldwin 1992); Okla.Stat.Ann. tit. 22, § 1228 (West 1991); Or.Rev.Stat. § 133.605 (1991); Rules Crim.Proc., Rule 2007, 42 Pa. Cons.Stat.Ann. (1989); S.C.Code Ann. § 23–15–60 (Law.Co-op.1989); S.D. Codified Laws Ann. § 23A–35–8 (1988); Tex. Penal Code Ann. § 9.51

come embedded firmly in the common law. Congress, as well, requires adherence to the rule in a statute that parallels many state statutory formulations:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or any thing therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1988); *see also* Sonnenreich & Ebner, *supra*, at 630–39 (reviewing statutory and common-law rules in several states).

■ The common-law rule serves diverse purposes. It prevents the needless destruction of the homeowner's property—an act with potentially devastating human consequences in pre-industrialized society. *See Lee v. Gansel*, 98 Eng.Rep. 935, 938 (K.B. 1774) (stating that a contrary rule "would leave the family within[ ] naked and exposed to thieves and robbers"). In addition, the rule protects the sanctity of the home and individual privacy. *Ker*, 374 U.S. at 52, 83 S.Ct. at 1638 (Brennan, J., concurring in part and dissenting in part). Finally, the rule protects both the occupant and police from the possible violent response of a startled occupant suddenly confronted with an unannounced entry by an unknown person. *People v. Dumas*, 9 Cal.3d 871, 109 Cal.Rptr. 304, 309, 512 P.2d 1208, 1213 (1973) (in bank).

■ *—Federal Law.* The Supreme Court has not determined whether officers executing a search warrant must knock and announce prior to entry. The Court follows the general rule that the Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). The test of reasonableness does not lend itself to "precise definition or mechanical application."

*Id.* at 559, 99 S.Ct. at 1884. In each case, the need for the particular search must be weighed against the intrusion into the privacy rights of individuals. *Id.* In this case, Attaway argues that his Fourth Amendment right was violated because the police executed a search of his home without first knocking, announcing their presence, and allowing adequate time for him to answer the door. We must determine whether the conduct of the police officers was reasonable in light of the facts known to them at the time they executed the warrant.

In *Ker v. California*, the Supreme Court held that the method of entry incident to lawful arrest accompanied by a search is governed by Fourth Amendment reasonableness standards. 374 U.S. at 40–41, 83 S.Ct. at 1633–34. In a plurality opinion, eight justices agreed that a police officer's manner of entry is subject to the Fourth Amendment standards of reasonableness with four of the eight concluding that the unannounced entry was reasonable and four concluding it was unreasonable, *id.* at 46, 83 S.Ct. at 1635–36; the ninth upheld the entry using a Fourteenth Amendment due process analysis. *Id.* at 44–45, 83 S.Ct. at 1645–46. The dispute centered on the circumstances that would justify abandonment of the notice requirement. From the various opinions in *Ker*, three elements of the rule of announcement emerge: (1) notice of presence; (2) identification of authority; and (3) statement of lawful purpose.

After first determining that the arrests were lawful, Justice Clark examined the method of entry under Fourth Amendment reasonableness principles. *Ker*, 374 U.S. at 38–41, 83 S.Ct. at 1632–34. The officers had entered without knock or notice, but the Court concluded that under the specific facts of the case the method of entry was reasonable: "In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's

(West 1974); Utah Code Ann. § 77–23–10 (1990); W.Va.Code § 62–1A–5 (1992); Wyo.Stat. § 7–7–104 (1987); *see also* Model Code of Pre–Arraignment Procedure § SS 220.3 (Proposed Official Draft 1975).

Many state statutes authorize the use of reasonable and necessary force in executing a

search warrant, without expressly requiring announcement: 725 ILCS 5/108–8 (1992 State Bar Ed.); Kan.Stat.Ann. § 22–2508 (1988); La.Code Crim.Proc.Ann. art. 164 (West 1991); Miss.Code Ann. § 99–27–15 (1972); Mont.Code Ann. § 46–5–228 (1993); Wis.Stat. § 968.14 (1985).

furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police." *Id.* at 40, 83 S.Ct. at 1633. Apparently, Justice Clark viewed compliance or noncompliance with the rule of announcement as an indicator of the reasonableness of the officer's conduct under the circumstances. *See id.* at 37–38, 83 S.Ct. at 1631–1632. Justice Clark appeared to accept an inevitable discovery rationale, stating that the constitution would not be violated if an officer discovers evidence more quickly than he would have had he followed the rules.[5]

Concurring in part and dissenting in part, Justice Brennan reasoned that the rule is part of the constitutional requirement that searches be reasonable:

The protections of individual freedom carried into the Fourth Amendment undoubtedly included this firmly established requirement of an announcement by police officers of purpose and authority before breaking into an individual's home. The requirement is no mere procedural nicety or formality attendant upon the service of a warrant. Decisions in both the federal and state courts have recognized, as did the English courts, that the requirement is of the essence of the substantive protections which safeguard individual liberty.

. . . . .

It is much too late in the day to deny that a lawful entry is as essential to vindication of the protections of the Fourth Amendment as, for example, probable cause to arrest or a search warrant for a search not incidental to an arrest.

*Ker,* 374 U.S. at 49, 53, 83 S.Ct. at 1637, 1640 (citation omitted) (footnote omitted). In his view, failure to comply with the rule of announcement is per se unreasonable except in three narrow circumstances:

[T]he Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

*Id.* at 47, 83 S.Ct. at 1636. Only the second exception does not rest on the occupant's awareness of the officer's presence. Justice Brennan refused to recognize any further exceptions to the rule. *Id.* at 55, 83 S.Ct. at 1640. First, any exception not requiring a showing of awareness of presence "necessarily implies a rejection of the inviolable presumption of innocence." *Id.* at 56, 83 S.Ct. at 1641. Second, loud noises or running within the house amount "only to ambiguous conduct," insufficient to form a basis for belief that an escape is being attempted or evidence is being destroyed. *Id.* at 57, 83 S.Ct. at 1641. Finally, announcement minimizes the danger both to officers and occupants that likely would attend a surprise entry and it decreases the probable impact of forcible

5. For support, Justice Clark quoted a passage from Justice Traynor's opinion in *People v. Maddox,* 46 Cal.2d 301, 294 P.2d 6, *cert. denied,* 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956). *See Ker,* 374 U.S. at 39–40, 83 S.Ct. at 1632–34. Justice Traynor wrote:

It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic

constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance.

*Maddox,* 294 P.2d at 9 (citations omitted).

entry in cases of mistaken identity. *Id.* at 57–58, 83 S.Ct. at 1641–1642.

Justice Brennan found that because no exception to the rule of announcement was present under the facts in *Ker,* the search was unreasonable and the evidence should have been suppressed. He reasoned that the officers' general knowledge, gained through their experience with drug dealers, did not satisfy the constitutional test for application of the destruction of evidence exception: "The subjective judgment of the police officers cannot constitutionally be a substitute for what has always been considered a necessarily objective inquiry, namely, whether circumstances exist in the *particular* case which allow an unannounced police entry." *Id.* at 63, 83 S.Ct. at 1644 (footnote omitted).

Lower federal courts have applied the principles of *Ker* to searches under a warrant. In *United States v. Francis,* 646 F.2d 251 (6th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981), the court summed up the state of the law:

Although the Supreme Court has not addressed the issue [of whether the Fourth Amendment requires officers executing a search warrant to knock, announce, and be refused admittance before entering] many federal courts have.... Though each case by itself is less than compelling, their conclusion has been unanimous: the [F]ourth [A]mendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances.

*Id.* at 257–58 (footnote omitted); *see also Rivera v. United States,* 928 F.2d 592, 606 (2d Cir.1991) (holding Fourth Amendment requires officers executing search warrant to make a reasonable effort to provide actual, not merely *pro forma,* notice of their identity and purpose); *United States v. Andrus,* 775 F.2d 825, 844 (7th Cir.1985) (holding that the "[F]ourth [A]mendment requires that the state officers' conduct in enforcing a search warrant be reasonable"); *United States v. Baker,* 638 F.2d 198, 202 n. 7 (10th Cir.1980) (knock-and-announce rule incorporated "to some extent" in Fourth Amendment). *But see United States v. Sagaribay,* 982 F.2d 906, 910 (5th Cir.) (knock-and-announce rule only a factor in determining reasonableness but

not an inflexible part of the Fourth Amendment), *cert. denied,* —— U.S. ——, 114 S.Ct. 160, 126 L.Ed.2d 120 (1993); *United States v. Nolan,* 718 F.2d 589, 600–02 (3d Cir.1983) (holding that the Fourth Amendment and the federal knock-and-announce statute overlap, but do not coincide). Thus, at the very least it appears that the rule of announcement is an important component of a reasonable search under the Fourth Amendment.

■■ —*New Mexico law.*—The New *Mexico Constitution embodies a knock-and-announce requirement.* In New Mexico, the ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable. *State v. Martinez,* 94 N.M. 436, 440, 612 P.2d 228, 232, *cert. denied,* 449 U.S. 959, 101 S.Ct. 371, 66 L.Ed.2d 226 (1980). This rule of law is best served by the application of certain objective criteria in deciding the reasonableness of any search and seizure. The application of objective criteria in determining whether officers have violated the knock and announce requirements will secure the right of each citizen to be free from unreasonable searches and seizures and, at the same time, will provide law enforcement with clear standards of conduct.

New Mexico has no statute setting forth the requirements of announcement prior to a forcible entry when executing a search warrant nor do we have a deep history of common-law decisions on the question. Yet, recent opinions from our intermediate appellate court have suggested that Article II, Section 10 incorporates a knock-and-announce requirement. In *State v. Baca,* 87 N.M. 12, 528 P.2d 656 (Ct.App.), *cert. denied,* 87 N.M. 5, 528 P.2d 649 (1974), the Court of Appeals sought guidance from the common law in determining whether the New Mexico constitutional provision prohibiting unreasonable searches placed limitations on the method of entry that police employ when executing a search warrant. After quoting the text of Article II, Section 10, the Court observed:

[W]e are obliged to look to the common law to determine what procedure must be followed prior to a forced entry. We recognize that some uncertainty exists as to common law requirements. Our view is

that an officer, prior to forcible entry, must give notice of authority and purpose, and be denied admittance. This is a general standard. Noncompliance with this standard is justified if exigent circumstances exist.

*Id.* at 13–14, 528 P.2d at 657–58 (citations omitted). Because the circumstances in *Baca* suggested exigencies sufficient to justify forcible entry, the Court concluded that "the defendant's constitutional right to freedom from unreasonable search and seizure was not violated." *Id.* at 14, 528 P.2d at 658.

We believe that the rule of announcement in *Baca* rests on state constitutional grounds. The requirement that officers executing a search warrant announce their identity and purpose and be denied admission is a critical component of a reasonable search under Article II, Section 10.[6] As we stated in *State v. Gutierrez,* 116 N.M. 431, 444, 863 P.2d 1052, 1065 (1993), "we observe that Article II, Section 10 expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions." The announcement requirement advances important Article II, Section 10 values by preventing needless destruction of private property, eliminating unnecessary intrusions upon privacy, and reducing the risk of violence both to police and occupants. Recognizing that the rule of announcement has a basis in our constitution "best effectuates the constitutional proscription of unreasonable searches and seizures." *See id.* at 446, 863 P.2d at 1067. Thus, if an officer attempts to execute a search warrant without complying with the announcement rule and exigent circumstances are not present, the entry is unreasonable and the officer commits an "unwarranted governmental intrusion" in violation of the accused's Article II, Section 10 rights.

We are aware that courts and commentators have criticized elevation of the common-law rule to constitutional status. *See State v. Valentine,* 264 Or. 54, 504 P.2d 84 (1972) (in banc), *cert. denied,* 412 U.S. 948, 93 S.Ct. 3001, 37 L.Ed.2d 1000 (1973); Sonnenreich & Ebner, *supra,* at 647 (arguing that elevation of rule of announcement to constitutional dimension in *Ker* was "historically unsound"). In *Valentine,* the court reasoned that "the interest of the momentary protection of the privacy of the householder ... [is] not of sufficient substance to rise to constitutional stature and require the exclusion of otherwise competent evidence." 504 P.2d at 89. If the constitutional requirement that searches be "reasonable" reaches no more than privacy—the right to be let alone—the rule of announcement does little to protect that privacy. *See id.* at 87. As Sonnenreich and Ebner observe: "Once identity and purpose are stated, entry must always be permitted; if permission is denied, or even delayed for an inordinate amount of time, entry may be forced, provided the officer has a valid purpose in gaining admission." Sonnenreich & Ebner, *supra,* at 647. Under this view, privacy interests are limited to a few seconds in which to respond to the officer's call.

Under Article II, Section 10, however, the concept of reasonableness cannot be defined so narrowly. "Reasonableness" is given life by the factual matrix in which events take place. Justice Frankfurter's observations on this point are particularly apt:

To say that the search must be reasonable is to require some criterion of reason. It is no guide at all ... to say that an "unreasonable search" is forbidden—that the search must be reasonable. What is the test of reason which makes a search reasonable? The test is the reason underly-

---

**6.** As the law in New Mexico stands now, if an officer does not knock and announce his presence prior to entering a dwelling, the entry presumptively is unreasonable because *Baca* states that "prior to forcible entry, [an officer] *must* give notice of authority and purpose, and be denied admittance." 87 N.M. at 13, 528 P.2d at 657 (emphasis added). If an officer does not knock and announce prior to forcible entry and exigent circumstances are not present, the fruits of that search would be excluded as a violation of

the general constitutional reasonableness requirement. In essence, *Baca* gives the knock-and-announce rule constitutional significance because failure to comply with the rule leads to exclusion of the evidence under the general reasonableness requirement. The effect of recognizing that the rule exists on a constitutional level does not change the current status of the law and it emphasizes the Court's strong belief in the protection of individual privacy and in the reasonable execution of warrants.

ing and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response.

*United States v. Rabinowitz,* 339 U.S. 56, 83, 70 S.Ct. 430, 442, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting), *overruled by Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (accepting Justice Frankfurter's language as the rule). We agree that the knock-and-announce criterion is vital to the constitutional constraint against unreasonable search and seizure; and we agree with the many federal courts that construe the rule of announcement as being constitutionally based. Article II, Section 10 embodies the disparate values of privacy, sanctity of the home, occupant safety, and police expedience and safety. We believe, therefore, that the knock-and-announce criterion is more than just another circumstance to be considered in evaluating the reasonableness of the execution of a warrant.

In addition to the federal cases cited construing the rule of announcement in *Ker* as part of the Fourth Amendment, several state courts view compliance with the rule of announcement as part of the state constitutional proscription against unreasonable searches and seizures. *See, e.g., State v. Dusch,* 259 Ind. 507, 289 N.E.2d 515, 517 (1972) (holding that state constitution requires announcement of authority before conducting search); *State v. Sakellson,* 379 N.W.2d 779, 784 (N.D. 1985) (holding that unannounced entry violates state constitution if the entry is not reasonable "under special circumstances"). In *Dusch,* the Indiana Supreme Court recognized that eight of the nine justices in *Ker* believed the Fourth Amendment embodied an announcement of authority requirement. 289 N.E.2d at 516. The court also found that cases from its jurisdiction indicated the rule of announcement was part of the constitutional proscription against unreasonable searches and seizures. *Id.* at 517. Based on this, the court held that the rule of announce-

ment was required by the Indiana Constitution. *Id.* We also rely on *Ker* and on past case law from our jurisdiction, *see, e.g., Baca,* 87 N.M. at 12, 528 P.2d at 656, to support our belief that the New Mexico Constitution requires law enforcement personnel to knock and announce their authority when executing a warrant.

■■■ *—Constitutional knock-and-announce requirement to be balanced against countervailing exigencies.* Noncompliance with the rule of announcement is not per se violative of Article II, Section 10. The essence of the reasonableness requirement of Article II, Section 10 does not require rigid adherence to the rule. The interests served by the rule of announcement must be balanced against potentially countervailing, legitimate government interests. In the context of search and seizure, a balance must be struck against the backdrop of probable cause to search. The right of the officers to enter the premises matures the moment a detached and neutral judicial officer determines that there is probable cause to search the premises. From that moment, governmental interests in the expeditious and safe execution of a search warrant are legitimate and strong. An otherwise legal search pursuant to a warrant is not made unreasonable by an unannounced entry when privacy and occupant safety interests are minimal and the interests of law enforcement are strong. Thus, partial compliance or non-compliance with the rule of announcement may be excused if exigent circumstances exist.

■■■ We expressly endorse the widely accepted, general exception to the rule of announcement based on an officer's objectively reasonable belief that full or partial compliance with the rule of announcement would increase the risk of danger to the officers effectuating the warrant. *See* 2 Wayne R. LaFave, *Search and Seizure* § 4.8(e) (2d ed. 1987 & Supp.1994) (discussing danger to person exceptions).[7] The risk of peril exception

---

7. We recognize that other circumstances might create sufficient exigency to justify noncompliance with the rule of announcement. *See Baca,* 87 N.M. at 14, 528 P.2d at 658 (stating that officer peril, fleeing suspect, and possible de-struction of evidence are examples of exigent circumstances); *United States v. Dohm,* 597 F.2d 535, 538 (5th Cir.1979) (stating that if suspect knows of officer's presence and purpose before compliance with knock and announce rule, then

is consistent with the balance of interests that we have identified above. The state's interests in safe execution of a warrant, when coupled with specific knowledge that the occupants of the place to be searched pose a serious risk to the officers, outweigh the occupants' interests in privacy of the home.

■ Exigent circumstances, while measured at the time of the entry, may be established by facts known to the officers prior to entry. *See People v. Dumas*, 9 Cal.3d 871, 109 Cal.Rptr. 304, 309, 512 P.2d 1208, 1213 (1973) (in bank) (stating that "unannounced entry may be excused on the basis of information received before reaching the location at which entry is to be effected when the information reasonably leads the officer to believe that compliance would increase his peril or frustrate the arrest"); *Sanchez*, 88 N.M. at 404, 540 P.2d at 1293 (validating unannounced entry based on facts known to the officers beforehand). To hold otherwise, especially when the exception is based on peril to the officers or occupants, makes little practical sense. If the police, through reliable sources, obtain in advance specific information suggesting that the particular defendant will likely respond with violence to a search or arrest warrant, those facts are probative of whether the officers reasonably believed that compliance with the rule of announcement would increase peril to themselves.

■ One inevitable question that must be addressed is whether the mere ownership or possession of firearms is insufficient to give rise to a risk of peril exigency. In *Dumas*, the court stated:

Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. This belief must be based on specific facts and not on broad, unsupported presumptions.

512 P.2d at 1213 (citations omitted). In *State v. Williams*, 168 Wis.2d 970, 485 N.W.2d 42

(1992), however, the Wisconsin Supreme Court criticized the implicit belief of the court in *Dumas* that individuals are more likely to shoot unknown intruders and less likely to shoot identified police officers, and stated that the *Dumas* rationale "is outdated as applied to armed drug dealers in the 1990s." *Id.* at 47. The *Williams* court believed that "guns are tools of the illegal drug trade" and concluded that "a person in possession of both firearms and large quantities of illegal drugs poses a significant threat to the safety of law enforcement officers." *Id.* at 48. Based on this, the *Williams* court concluded that the mere presence of firearms and drugs together gives rise to exigent circumstances because of the "violence associated with drug trafficking today." *See id.* at 47–48.

We do not believe that giving notice and announcement of purpose necessarily is more compelling when an officer knows that a suspect possesses weapons. *Cf. Dumas*, 512 P.2d at 1213 (stating that compliance with rule is more compelling when officers are aware of weapons). We do believe, however, that our constitution requires an officer to have knowledge of the specific individual's propensity to use violence before an unannounced entry would be considered reasonable. General knowledge regarding the propensity of armed drug dealers is not sufficient to excuse compliance with announcement requirements. *See People v. Gastelo*, 67 Cal.2d 586, 63 Cal.Rptr. 10, 12, 432 P.2d 706, 708 (1967). "Exceptions to the entry requirement must be founded on particularity and not on generality." *Dusch*, 289 N.E.2d at 518.

■ The requirement of specificity is to be liberally construed because direct evidence of a suspect's propensity rarely will be available. Specific evidence that might give the officers reason to believe that a particular suspect known to possess weapons presents a danger to the officers may be factored into the reasonableness determination. Thus, for example, knowledge that a suspect owns weapons and knowledge that the sus-

officer need not comply with rule). We list these possible circumstances to place the term "exigency" in perspective, but because we are not

faced with these factual situations in the current case, we do not fully address their validity.

pect has committed a crime of violence may be sufficient to reasonably conclude that the suspect is likely to use those weapons. The same might be true if the police have knowledge that the suspect possesses a large cache of illegal or unusually dangerous weapons, or that the suspect possesses weapons coupled with other circumstances tending to show violent or unpredictable behavior.

■ *The method of entry was reasonable as a matter of New Mexico Constitutional law.* In reviewing the risk of peril exception we follow the view that endorses an objective test of whether, under the facts established, a reasonable, well-trained, and prudent police officer would believe that full or partial compliance with the rule of announcement would create or enhance the danger to the entering officers. *See State v. Ford,* 310 Or. 623, 801 P.2d 754, 763 (1990). In so doing, we consider all of the circumstances as found or impliedly found by the trial court to be present at the time of entry.

■ Here, the trial court entered no findings of fact. In denying the motion to suppress in an oral order from the bench, the trial court judge only stated:

> It is my finding and my determination that the officers had a reasonable cause for the method of entry chosen based on the information related to them by the various officers who had been in charge of collecting information, that they had a reasonable cause to believe that they might be in jeopardy if they waited a length of time for announcement and answer. So the breach and the entry was justified in my determination.

Thus, under a de novo review, we must draw from the record to derive findings based on reasonable facts and inferences and determine whether those facts and inferences support the conclusion reached by the court. The record fully supports a finding that shortly before the search Detective Littlejohn supplied the SWAT team members with the following information:

1. Attaway was believed to be both an amphetamine user and a dealer of substantial quantity;
2. There was an outstanding California warrant for Attaway's arrest;
3. Attaway had been convicted of weapons and drug charges in the past;
4. Attaway possessed a large arsenal of weapons including an automatic weapon, two sawed-off shotguns, a couple of rifles, and numerous handguns; and
5. Attaway had threatened police officers.[8]

In addition, it is uncontroverted that the officers did knock, announce their authority, and wait a short period of time before entering the residence. Finally, Officer Samuel Haddy, commander of the SWAT team, testified that after announcement of purpose and authority, the team was in an exposed and vulnerable position on the front porch of the Attaway home and there was no place to seek "cover" from any hostile action.

Given these facts, we are satisfied that the ten to fifteen second pause in this case was sufficient time for the officers to wait before executing their forcible entry into the house. In assessing these factors, Officer Haddy testified that "I fully expected to be involved in an armed confrontation due to the fact of the past arrests that we were shown for weapons and narcotics and the fact that the gentleman was wanted in California and he had made threats against police officers." The time interval, while extremely short for 6:00 A.M. on a Saturday morning, was sufficiently long given the highly specific indicia

---

8. We disagree with the conclusion of the Court of Appeals that it was not clear whether the officers who executed the warrant knew of the threats Attaway had made against police officers. We have reviewed the record, and conclude that the following uncontroverted colloquy establishes to our satisfaction that Littlejohn informed the SWAT team members of the threats:

The Court: With regard to the generic threats toward police officers, what did you advise the SWAT team officers?

Littlejohn: I told the police officers that I had information from an informant that Mr. Attaway had made specific threats against police officers, myself included.

Therefore, the threats can be used as evidence that exigent circumstances did exist that gave the officers a reasonable belief that their lives would be in peril if they waited any longer than ten to fifteen seconds.

that Attaway posed a menace to police executing the warrant. Therefore, we hold that the method of entry was reasonable under Article II, Section 10 of the New Mexico Constitution.

■ *The entry was reasonable under federal law.* For the same reasons, we are satisfied that the Fourth Amendment reasonableness requirement was not violated in this case. The Supreme Court has not expressly recognized that an officer's reasonable apprehension of peril will excuse noncompliance with any knock-and-announce rule that might exist under the Fourth Amendment. *See Ker,* 374 U.S. at 39–41, 83 S.Ct. at 1632–1634. As we noted, however, lower federal courts have held with substantial uniformity that the Fourth Amendment embodies a knock-and-announce requirement and its attendant exceptions. *See, e.g., Rivera,* 928 F.2d at 606; *Andrus,* 775 F.2d at 844; *Francis,* 646 F.2d at 257–58; *Baker,* 638 F.2d at 202 n. 7; *cf. Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990) (endorsing state court statement that risk of danger is an exigent circumstance that may justify warrantless entry to arrest or search).

Federal courts, under circumstances that are similar and perhaps less compelling have found no violation of the federal knock-and-announce statute requiring exclusion of evidence. *See, e.g., United States v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.) (holding suppression not required under federal statute when officers waited only briefly after announcement before forcible entry when police knew that defendant was suspected of trafficking in narcotics, was a felon in possession of "an array of firearms," and wore a bullet proof vest), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); *see also* Marvin O. Meier, Annotation, *What Constitutes Violation of 18 USCS § 3109 Requiring Federal Officer to Give Notice of His Authority and Purpose Prior to Breaking Open Door or Window or Other Part of House to Execute Search Warrant,* 21 A.L.R.Fed. 820, 856–61, 867–77 (1974 & Supp.1993) (citing cases applying "apprehension of peril" exception and cases in which police announced both authority and purpose before forcible entry). Therefore, we hold that the method of entry was reasonable under the Fourth Amendment.

*Conclusion.* For all of the foregoing reasons, we affirm that part of the judgment of the Court of Appeals concluding that the method of entry was reasonable under the facts of this case. In addition, we adopt the reasoning of the Court of Appeals on all other points raised in the petition and, accordingly, affirm the judgments of conviction in their entirety.

IT IS SO ORDERED.

FROST, J., concurs.

BACA, J., specially concurs.

BACA, Justice (specially concurring).

While I concur in ·the foregoing opinion affirming Attaway's conviction, I write specially to express my misgivings regarding the majority's elevation of the knock and announce rule to constitutional status. I also write separately to emphasize that this Court, when faced with the factual reality of the violence associated with the drug trade, should strongly consider the factors discussed in *Williams* when determining the reasonableness of no-knock warrants.

The majority, in my opinion, goes further than it should in elevating the knock and announce requirement to constitutional status. The Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. *Id.* at 559, 99 S.Ct. at 1884. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. *Id.* In this case, Defendant argues that his Fourth Amendment right was violated because the police executed a search of his home without first knocking, announcing their presence, and allowing adequate time for Defendant to answer the door. Our analysis must be to determine whether the conduct of the police officers was reasonable in light of the facts known to them at the time they executed the warrant.

Similarly, under the New Mexico Constitution, Article II, Section 10, the test for determining whether there has been a constitutional violation is whether a search and seizure was unreasonable. Although the opinion, in footnote 6, attempts to explain its rationale for elevating knock and announce requirements to constitutional status, I feel it fails to be convincing. The sole basis for elevating the knock and announce requirement to constitutional status, as far as I can tell, is that in *State v. Baca* this Court held that "an officer, prior to forcible entry, must give notice of authority and purpose, and be denied admittance." 87 N.M. 5, 13, 528 P.2d 649, 657 (Ct.App.), *cert. denied,* 87 N.M. 5, 528 P.2d 649 (1974). The opinion fails to point out, however, that preceding this statement the *Baca* court stated that "New Mexico has neither statute nor decision stating what is 'unreasonable' in circumstances such as these." *Id.* The *Baca* court also qualified its view that an officer must give notice, authority and purpose and then be denied admittance by stating that this is a "general standard," *id,* and that "[t]he reasonableness of each search and seizure is to be decided upon its own facts and circumstances in light of these general standards." *Id.* at 14, 528 P.2d at 658. Thus, the *Baca* court actually held that violations of New Mexico Constitution, Article II, Section 10 are to be determined based on a reasonableness standard, and did not, as the opinion attempts to explain, elevate the knock and announce requirement to constitutional status.

I also find that the opinion underemphasizes the factual realities of today's drug trade. I believe that this court should strongly consider factors as outlined in *State v. Williams,* 168 Wis.2d 970, 485 N.W.2d 42 (1992), when determining the reasonableness of law enforcement actions in executing a search warrant. The Wisconsin Supreme Court found that

> [t]he violence associated with drug trafficking today places law enforcement officers in extreme danger. Much of the fuel for such violence stems from street gangs and the profitability associated with dealing illegal drugs.... Bitter experience has illustrated that guns are tools of the illegal drug trade. Therefore, we conclude ...

that a person in possession of both firearms and large quantities of illegal drugs poses a significant threat to the safety of law enforcement officers attempting to arrest the suspected drug dealer and seize the illicit drugs. Such volatile circumstances are sufficient to constitute "exigent circumstances" justifying an unannounced entry by the officers.

*Williams,* 485 N.W.2d at 47–48. Given the realities of the drug trade, it may be requiring too much to insist that officers executing a warrant for large quantities of illegal drugs and large quantities of firearms from suspected drug dealers should specifically know of the suspects' violent propensity before executing a no-knock warrant. Our determination should be whether the officers' conduct was objectively reasonable. Needless exposure of police to the violence and death commonly associated with the drug trade today and protection of citizens' rights to be safe and secure in their homes can be melded. This acknowledgement of the realities of the drug trade does not violate the Fourth Amendment's nor New Mexico's constitutional requirement that searches and seizures be reasonable.

I concur in that portion of the opinion that affirms Attaway's conviction.