The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **JANUARY 31, 2022**

**No. A-1-CA-36024**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**LEO JIM,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**DUFFY, Judge.**

{1}     Defendant Leo Jim asks us to determine whether a police inventory search of a locked gun safe inside his pickup truck violated his right to be free from an unreasonable search under Article II, Section 10 of the New Mexico Constitution. We hold that the search in this case violated the New Mexico Constitution and reverse the district court's denial of Defendant's motion to suppress.

**BACKGROUND**

{2}     At around 8:00 p.m. in March 2015, Officer Mosley with the Farmington Police Department was dispatched to the San Juan Plaza shopping center in response to a report that a subject—Defendant—would not leave. Defendant had apparently been sitting inside a pickup truck in the parking lot for several hours. After observing Defendant, a security guard asked Defendant to leave; Defendant drove to Dunkin' Donuts on the other side of the parking lot but immediately returned. The security guard approached Defendant again and asked him to leave; Defendant would not, and the security guard called the police. Officer Mosley arrived about twenty minutes later.

{3}     Defendant got out of the truck and walked toward Officer Mosley, at which point the officer placed Defendant in handcuffs and arrested him for trespassing, a misdemeanor offense. *See* NMSA 1978, § 30-14-1(B), (E) (1995). Officer Mosley advised Defendant that his truck would be impounded. The truck was locked but Officer Mosley used Defendant's keys to open the door and proceeded to inventory

the truck's contents. Officer Mosley found a methamphetamine pipe, smoking straw, and tin foil with heroin residue underneath the driver's side floor mat and seized those items. He found a locked gun safe under the rear seat and removed it from the truck for safekeeping pending owner pickup. The officer found a key for the safe on Defendant's key ring and used it to unlock the safe; inside, he found a small handgun and a small amount of heroin.

{4} The State filed a criminal information charging Defendant with criminal trespass, contrary to Section 30-14-1(B); possession of a controlled substance (heroin), contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2021); and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). Defendant moved to suppress all evidence illegally obtained as the fruit of an unreasonable warrantless search and seizure in violation of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The State responded that the search following Defendant's arrest was a valid inventory search. The State pointed out that inventory searches are a well-established exception to the warrant requirement and are lawful if three requirements are satisfied: (1) the search is of a vehicle in police custody or control, (2) the search is conducted pursuant to established police regulations or procedures, and (3) the search is reasonable. The district court initially granted Defendant's motion, concluding the State had not established that the Farmington Police Department had a policy permitting Officer Mosley to unlock containers

encountered during the inventory search. The court reversed its decision, however, after the State filed a motion to reconsider and introduced evidence of a police policy permitting the opening of locked containers.

{5}     Defendant conditionally pled no contest to one charge of possession of a controlled substance (heroin) and received a conditional discharge, but reserved his right to appeal the district court's denial of his motion to suppress.

**DISCUSSION**

{6}     At issue in this appeal is whether the warrantless search of a locked gun safe during the course of an automobile inventory search violated Article II, Section 10 of the New Mexico Constitution. Defendant argues that "the search was unreasonable under Article II, Section 10 because his legitimate expectation of privacy in the contents of his locked gun safe outweighed any purported governmental interest in conducting a warrantless inventory search of the locked gun safe." The State argues that we should not diverge from the federal inventory search standard and maintains that the search was reasonable under both the federal and state constitutions.

{7}     "The constitutionality of a search or seizure is a mixed question of law and fact and demands de novo review." *State v. Ochoa*, 2009-NMCA-002, ¶ 6, 146 N.M. 32, 206 P.3d 143 (internal quotation marks and citation omitted). "When a defendant invokes our inherent power as a separate sovereign in our federalist system of government to provide more liberty under the New Mexico Constitution than is

mandated by the United States Constitution," we utilize the interstitial approach to constitutional interpretation set forth in *State v. Gomez*, 1997-NMSC-006, ¶¶ 19, 22-23, 122 N.M. 777, 932 P.2d 1. *Ochoa*, 2009-NMCA-002, ¶ 6 (emphasis omitted). The *Gomez* interstitial analysis requires us to answer three questions: (1) whether the right asserted by the defendant is protected under the federal constitution, (2) whether the defendant preserved the state constitutional claim, and (3) whether there exists any one of three reasons for diverging from federal precedent. *State v. Crane*, 2014-NMSC-026, ¶ 12, 329 P.3d 689.

**The Fourth Amendment Does Not Prohibit the Opening of a Locked Container During an Automobile Inventory Search**

{8} Automobile inventory searches are a well-defined but controversial exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Nearly fifty years ago, the United States Supreme Court legitimized the "routine practice of securing and inventorying" the contents of an automobile after it had been impounded. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). *But see State v. Ingram*, 914 N.W.2d 794, 810 (Iowa 2018) (noting that "[t]he majority opinions in *Bertine* and *Opperman* were highly contested and provoked vigorous dissents"). In evaluating whether the practice violated the Fourth Amendment, the Court began by emphasizing that "less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Opperman*, 428 U.S. at 367. The Court indicated that inventory procedures "developed in response to three distinct needs: the

protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger[.]" *Id.* at 369 (citations omitted). In light of these purposes, the Court concluded that "inventories pursuant to standard police procedures are reasonable" under the Fourth Amendment. *Id.* at 372; *see Bertine*, 479 U.S. at 374 (holding that "inventory procedures administered in good faith satisfy the Fourth Amendment"); *Cady v. Dombrowski*, 413 U.S. 433, 446 (1973) (holding that the absence of a warrant did not render a community caretaking search of a vehicle's trunk unreasonable under the Fourth Amendment). *But see Ingram*, 914 N.W.2d at 804 (noting that in *Bertine*, the Court indicated that "[a] warrantless inventory search and seizure might be invalid if the accused can show the government action was in bad faith or for the sole purpose of investigation, a very high bar" (internal quotation marks and citation omitted)).

{9}     Since *Opperman*, the United States Supreme Court's inventory search jurisprudence has focused on whether police followed standardized procedures during the search. In *Bertine*, the Court noted the need for a single, familiar standard to guide police officers with limited time and expertise. 479 U.S. at 374-75. *But cf. People v. Bertine*, 706 P.2d 411, 418 (Colo. 1985) (en banc) (concluding that "the governmental interests served by the search were not substantial" and that "the defendant's privacy interests in [closed containers] outweighed the government's need to inventory their contents"). The Court has uniformly upheld inventory

searches when police followed standard procedures, *e.g.*, *Bertine*, 479 U.S. at 369 (affirming the search of a closed backpack found inside the defendant's van after he was arrested for driving while under the influence of alcohol), and found them unconstitutional when they have not, *see Florida v. Wells*, 495 U.S. 1, 4-5 (1990) (concluding that the search of a locked suitcase in the defendant's trunk violated the Fourth Amendment because "the Florida Highway Patrol had no policy [whatsoever] with respect to the opening of closed containers encountered during an inventory search . . . [and] absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment").

{10}     The Court remarked in *Wells* that "policies of opening all containers . . . are unquestionably permissible[.]" *Id.* at 4. After *Wells*, federal courts have broadly upheld inventory searches of locked containers inside automobiles where police followed their own inventory search procedures. *See, e.g.*, *United States v. Thompson*, 29 F.3d 62, 64-66 (2d Cir. 1994) (upholding an inventory search of a locked briefcase, opened using the defendant's key, because police did not search in bad faith and complied with the police's standardized inventory search procedures); *United States v. Kordosky*, 921 F.2d 722, 723-24 (7th Cir. 1991) (holding that an inventory search of a locked compartment in a car's trunk did not violate the Fourth Amendment because it complied with the unwritten policy of a sub-unit of a police department); *United States v. Evans*, 937 F.2d 1534, 1538-39 (10th Cir. 1991) (holding that an inventory search of a locked carry-on bag was reasonable because

police inventory search policy required the opening of locked containers); *United States v. Trujillo*, 341 F. Supp. 3d 1280, 1286 (D.N.M. 2018) ("Because [the Bernalillo County Sheriff's Deputy conducting an inventory search of a locked backpack] followed standardized criteria set forth by the Bernalillo Sheriff's Department and acted in good faith pursuant to those established policies, the Court finds that the search of [the defendant's] locked backpack was proper and did not violate his Fourth Amendment rights.").

{11}    In light of the foregoing, we agree with the parties that, on the record before us, the inventory search of the locked gun safe in Defendant's truck did not violate the Fourth Amendment because the search was conducted pursuant to a standardized police policy and there is no claim of bad faith or pretext. The State presented evidence of the Farmington Police Department's inventory search policies, which specifically state that the "inventory search will consist of documentation of all personal property with apparent value or . . . apparent significant importance to the owner which is contained inside or upon the vehicle, including property inside closed compartments *or locked containers within the vehicle.* In regard[] to locked containers, officers may not damage the vehicle or property in any way to enter these containers." (Emphasis added.) Officer Mosley followed these policies and opened the locked gun safe using a key found on Defendant's key ring. Defendant does not argue that this inventory was conducted in bad faith or for the sole purpose of

investigation. *See Bertine*, 479 U.S. at 372. Accordingly, we turn to the New Mexico Constitution to evaluate whether Article II, Section 10 provides greater protection.

**Defendant Preserved His Claim Under the New Mexico Constitution**

{12}     Because "[i]t is well-established that Article II, Section 10 provides more protection against unreasonable searches and seizures than the Fourth Amendment[,]" *State v. Leyva*, 2011-NMSC-009, ¶ 51, 149 N.M. 435, 250 P.3d 861, Defendant need only "(1) assert[] the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) show[] the factual basis needed for the trial court to rule on the issue" in order to preserve his claim. *Gomez*, 1997-NMSC-006, ¶ 22. In this case, Defendant asserted in his motion to suppress that the inventory search violated his right to be free from an unreasonable search under Article II, Section 10 and developed a factual record in his motion and at the suppression hearing. Neither party contests the preservation of the state constitutional claim here, and we agree that Defendant's Article II, Section 10 claim was preserved.

**Article II, Section 10 Provides Greater Protection of Privacy Than the Fourth Amendment**

{13}     Although New Mexico has long followed the federal approach, we are asked to consider for the first time whether the scope of an inventory search was

unreasonable, and thus unconstitutional, under the New Mexico Constitution.[1] New Mexico courts, relying on federal precedent applying the Fourth Amendment, have approved of automobile inventories as long as three requirements are met: (1) the automobile is lawfully in police custody or control; (2) the inventory is made pursuant to established police procedures; and (3) the search is reasonable. *State v. Ruffino*, 1980-NMSC-072, ¶ 5, 94 N.M. 500, 612 P.2d 1311. Under the third prong, New Mexico courts have applied the Fourth Amendment standard articulated in *Opperman* and have generally upheld inventory searches as reasonable "if they are made pursuant to an established procedure and in furtherance of any one of three purposes: (1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Shaw*, 1993-NMCA-016, ¶ 10 (citing *Opperman*, 428 U.S. at 369).

{14} Defendant has not asked us to apply a different overall framework under our state constitution, and he concedes that the first two requirements of the *Ruffino* test are satisfied. His challenge is limited to the third requirement: reasonableness.

---

[1] To the extent the State argues that this Court has previously decided inventory search cases under the state constitution, we disagree. The cases cited by the State—*State v. Lopez*, 2009-NMCA-127, ¶ 1, 147 N.M. 364, 223 P.3d 361, and *State v. Shaw*, 1993-NMCA-016, 115 N.M. 174, 848 P.2d 1101—"do not independently explore the reach of Article II, Section 10." *State v. Gutierrez*, 1993-NMSC-062, ¶ 30, 116 N.M. 431, 863 P.2d 1052; *see also Ochoa*, 2009-NMCA-002, ¶ 29 (stating that none of the cases cited by the state "analyze the traffic stop under the state constitutional interstitial approach" and were therefore not conclusive on the state constitutional question).

Specifically, he argues that the inventory search was unreasonable in scope for purposes of Article II, Section 10 because it intruded upon his constitutionally protected expectation of privacy in the contents of his locked gun safe. We are persuaded that he is correct. For the reasons that follow, we conclude that the reasonableness of an inventory search under Article II, Section 10 is determined by balancing the need for the search in a particular case against the intrusion upon an individual's privacy interest. *See State v. Ryon*, 2005-NMSC-005, ¶ 16, 137 N.M. 174, 108 P.3d 1032 (applying this standard in a community caretaker case). Because we conclude that the search of the locked gun safe had little, if any, utility for inventory purposes and that the search infringed upon a substantial privacy interest, we depart from federal precedent and conclude that the search was unreasonable under Article II, Section 10.

## A.    Reasons to Depart From Federal Jurisprudence

{15}    "[A] state court may diverge from federal precedent for one of the following three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 14, 130 N.M. 386, 25 P.3d 225 (internal quotation marks and citation omitted). In this case, we focus on two distinctive characteristics of New Mexico law: greater protection of privacy in the context of automobiles and a strong preference for warrants.

## B.    Article II, Section 10 of the New Mexico Constitution

{16}     "Article II, Section 10 expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions, and thus identified a broader protection to individual privacy under the New Mexico Constitution than under the Fourth Amendment." *Leyva*, 2011-NMSC-009, ¶ 53 (internal quotation marks and citation omitted); *see also State v. Garcia*, 2009-NMSC-046, ¶ 31, 147 N.M. 134, 217 P.3d 1032 ("Article II, Section 10 is calibrated slightly differently than the Fourth Amendment."). The search and seizure provision of the New Mexico Constitution "is a foundation of both personal privacy and the integrity of the criminal justice system, as well as the ultimate regulator of police conduct." *Garcia*, 2009-NMSC-046, ¶ 31.

{17}     New Mexico courts have long held that our state constitution provides New Mexico's motorists with a higher standard of protection from unreasonable searches and seizures than the Fourth Amendment. *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15. In *Gomez*, our Supreme Court recognized that the automobile exception to the warrant requirement, like the inventory search exception at issue here, "was based, in part, on the notion that a motorist has a lesser expectation of privacy in an automobile." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15. "In rejecting the federal automobile exception to the warrant requirement, [our Supreme] Court dismissed the notion that an individual lowers his expectation of privacy when he enters an automobile, and elected instead to provide motorists with a 'layer of protection' from unreasonable searches and seizures that is unavailable at the federal level." *Id.* "The

extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law." *Id.*

{18}    Our Supreme Court has also consistently emphasized a second distinctive characteristic of New Mexico's constitutional protection against unreasonable searches and seizures that is significant to our analysis: a strong preference for warrants. *See, e.g.*, *Crane*, 2014-NMSC-026, ¶ 16. A warrant is no meaningless formality. It "has a significant role to play in that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer[.]" *Id.* (internal quotation marks and citation omitted). Accordingly, our warrantless search analysis begins "with the bedrock principle . . . that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable[.]" *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (emphasis, internal quotation marks, and citation omitted). "Like all warrantless searches, . . . inventory searches are presumed to be unreasonable and the burden of establishing their validity is on the [s]tate." *Shaw*, 1993-NMCA-016, ¶ 5.

{19}    In the context of warrantless investigatory searches, New Mexico courts have rejected federal bright-line rules and have taken a more restrictive view of the permissible scope of such searches under the New Mexico Constitution. *E.g.*, *Rowell*, 2008-NMSC-041, ¶¶ 14, 20 (declining to follow United States Supreme Court cases allowing for the search of an automobile incident to arrest and holding

that the scope of such a search was "limited to the area from within which the arrestee might gain possession of a weapon or destructible evidence" (alteration, internal quotation marks, and citation omitted)); *Gomez*, 1997-NMSC-006, ¶¶ 34-35 (rejecting the federal bright-line rule allowing warrantless probable cause searches of automobiles and containers within the automobile and holding that a particularized showing of exigent circumstances was required). In *Rowell*, for example, our Supreme Court departed from federal precedent that allowed an officer to search an automobile "whenever an arrestee had been stopped in a car, even if he or she no longer had any access to it at the time of the search." 2008-NMSC-041, ¶ 15. The Court limited the exception for searches incident to an arrest under the New Mexico Constitution to "the range of the arrestee's potential ability to access any weapons, evidence or means of escape." *Id.* ¶ 23. The Court reasoned that this standard "was consistent with the established principle that a warrantless search should 'be strictly circumscribed by the exigencies which justify its initiation[,]' " *id.* ¶ 14 (quoting *Terry v. Ohio*, 392 U.S. 1, 26 (1968)), and "provide[s] sufficient latitude in allowing searches incident to arrest where they can be justified on principle, while refusing to broaden exceptions to New Mexico's constitutional warrant requirement beyond their own justifications." *Id.* ¶ 23. In the Court's view, the federal standard had stretched the exception beyond its breaking point. *Id.* ¶ 22; *Ochoa*, 2009-NMCA-002, ¶ 23.

{20}    We have similar misgivings about the scope of the automobile inventory exception to the warrant requirement under the Fourth Amendment. The Fourth Amendment standard approaches a bright-line rule broadly authorizing routine inventory searches pursuant to standard police procedures. *See Bertine*, 479 U.S. at 372. In this way, police departments have been permitted to determine the scope of the search based on the policies and procedures adopted in the jurisdiction. *See Ingram*, 914 N.W.2d at 804-05 ("Under the federal approach, local law enforcement, and not independent and impartial judges, may set the contours of the substantive protections for liberty under the Fourth Amendment in the field of warrantless inventory searches through the crafting of local policy."). As a result, police policies like those in this case, which permit the opening of all compartments and containers, all but eliminate the need for a warrant for a broad array of intrusive searches.

{21}    Other state courts have been critical of the wide reach of Fourth Amendment inventory searches.[2] As the Oregon Court of Appeals observed, "[i]t would be

_____

[2] A number of state courts have departed from the federal approach and circumscribed the practice under their state constitutions, though their approaches vary. *See, e.g.*, *State v. Daniel*, 589 P.2d 408, 416-17 (Alaska 1979) (holding that the warrantless inventory of closed, locked, or sealed luggage, containers, or packages in a vehicle is unreasonable and unconstitutional under the Alaska Constitution); *Nealy v. State*, 400 So. 2d 95, 97-98 (Fla. Dist. Ct. App. 1981) (holding that a warrantless inventory search was unreasonable under the Florida Constitution because police had not established the element of necessity); *State v. Lucas*, 859 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) (evaluating an inventory search under the totality of the circumstances and holding that opening a locked container during the course of an inventory search was unreasonable under the Indiana Constitution); *Ingram*, 914 N.W.2d at 818 (setting out procedures police should follow before conducting an inventory search and requiring police to inventory

anomalous to hold that a permissible warrantless [investigatory] search of an automobile . . . is more limited in scope than that permitted when a person's car is simply impounded." *Atkinson*, 669 P.2d at 346. More recently, the Iowa Supreme Court reasoned that the federal framework allowing police to obtain a broad inventory search of a vehicle runs counter to the warrant requirement and expressed concern that the exception has evolved beyond its initial benign purposes into a "powerful unregulated tool in crime control." *Ingram*, 914 N.W.2d at 814-15 (observing that "[a] warrantless inventory search and seizure seems more like a law

---

containers as a unit under the Iowa Constitution); *State v. Sawyer*, 571 P.2d 1131, 1134 (Mont. 1977) (limiting inventory searches to items in plain view under the Montana Constitution), *overruled on other grounds by State v. Long*, 700 P.2d 153, 155 (Mont. 1985) (holding that the Montana Constitution's privacy provision does not require the exclusion of evidence gathered by a private search); *State v. Hummel*, 179 A.3d 366, 373-74 (N.J. 2018) (evaluating the reasonableness of an inventory search by considering the scope of the search, the procedure used, and the availability of less intrusive alternatives); *State v. Mangold*, 414 A.2d 1312, 1318 (N.J. 1980) ("[I]f a vehicle is lawfully impounded and its owner or permissive user is present, that person must be given the option of either consenting to the inventory or making his own arrangements for the safekeeping of the property contained in the vehicle. Absent consent or alternative security provisions, an inventory may be not undertaken [and] . . . the vehicle owner or user will be presumed to have assumed the risk for any claims of property loss or theft arising from the impoundment."); *State v. Atkinson*, 669 P.2d 343, 344-345 (Or. Ct. App. 1983) (in banc) (holding that a search of the glove compartment of an impounded car exceeded the scope of a permissible inventory search under the Oregon Constitution); *State v. Opperman*, 247 N.W.2d 673, 675 (S.D. 1976) (holding, on remand from the United States Supreme Court, that "noninvestigative police inventory searches of automobile[s] without a warrant must be restricted to safeguarding those articles which are within plain view of the officer's vision"); *State v. White*, 958 P.2d 982, 986-87 (Wash. 1998) (holding that under Washington's Constitution, opening of locked trunk was not permitted absent manifest necessity); *State v. York*, 506 S.E.2d 358, 363 (W. Va. 1998) ("[F]or an inventory search to be proper, the taking of the inventory itself must be prompted by a number of valuables in plain view inside the car[.]").

enforcement weapon than a benign service to citizens"); *see also Opperman*, 428 U.S. at 377, 379-80 (Powell, J., concurring) (noting that "[t]he central purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials" and cautioning that "the unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances"). We share these concerns and believe the federal approach is inconsistent with New Mexico's strong preference for warrants and the greater privacy protections afforded under Article II, Section 10. Therefore, departure from federal precedent is justified here.

{22} Having rejected the federal bright-line approach to automobile inventory searches, we now turn to the protections guaranteed under the New Mexico Constitution. Our evaluation of whether this search was reasonable under Article II, Section 10 is guided by familiar principles: we must weigh the "governmental and societal interests advanced to justify [the] intrusion[] against the constitutionally protected interest of the individual citizen in the privacy of his effects." *Opperman*, 428 U.S. at 377-78 (Powell, J., concurring); *see Leyva*, 2011-NMSC-009, ¶ 55; *Ryon*, 2005-NMSC-005, ¶ 16. This approach adheres to the fact-specific nature of reasonableness determinations under the New Mexico Constitution. *See Ochoa*, 2009-NMCA-002, ¶ 24 (stating that the New Mexico Constitution favors "an examination into the reasonableness of officers' actions under the circumstances of each case").

{23}     We turn first to our evaluation of the privacy interest in a closed and locked container in an automobile. New Mexico has departed from federal precedent in evaluating the strength of the competing interests involved. While "[f]ederal caselaw has tended to minimize the strength of the privacy interest in the interior of automobiles," *Ingram*, 914 N.W.2d at 816-17, New Mexico courts have rejected "the notion that an individual lowers his expectation of privacy when he enters an automobile[.]" *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15. The State correctly points out that the privacy interest in an automobile is not equivalent to the privacy interest in a home. *State v. Bomboy*, 2008-NMSC-029, ¶ 12, 144 N.M. 151, 184 P.3d 1045. Nevertheless, New Mexico's extra layer of protection from unreasonable searches and seizures involving automobiles recognizes and safeguards the substantial privacy interest New Mexico's motorists have in the papers and effects that may be found inside an automobile. This Court's early inventory search jurisprudence acknowledged as much, observing that " 'a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner.' " *State v. Nemrod*, 1973-NMCA-059, ¶ 12, 85 N.M. 118, 509 P.2d 885 (quoting *Mozzetti v. Super. Ct. of Sacramento Cnty.*, 484 P.2d 84, 88 (Cal. 1971) (in bank)), *overruled on other grounds by State v. Vigil*, 1974-NMCA-065, ¶ 13, 86 N.M. 388, 524 P.2d 1004. Defendant also had an expectation of privacy with respect to the contents of his locked safe, one that was sufficient to invoke constitutional protections against unreasonable police intrusion. *See United States v.*

*Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause."). That expectation was not diminished because the safe was found inside an automobile. *See Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15.

{24}     Against these interests we consider the governmental and societal need for the search. We evaluate the governmental need by considering the extent to which the search was reasonably necessary to accomplish any of the three legitimate governmental purposes that justify this type of administrative caretaking search. *See Ryon*, 2005-NMSC-005, ¶ 38 (applying this principle in the context of a community caretaking search); *see also Rowell*, 2008-NMSC-041, ¶ 14 (stating that "a warrantless search should be strictly circumscribed by the exigencies which justify its initiation" (internal quotation marks and citation omitted)). The State maintains that the search served two purposes: protecting Defendant's property and protecting the police from claims of loss or theft.[3] *Id.*

{25}     With respect to the governmental interest in safeguarding Defendant's property, Defendant contends, and we agree, that his property was adequately

---

[3]The State does not argue that the search protected the police from potential danger. *See Shaw*, 1993-NMCA-016, ¶ 10.

protected by the nature of the container and the existence of the lock. While the State responds that "a thief could still steal the gun safe itself, along with its contents[,]" that possibility becomes exceedingly unlikely where, as here, the officer removes the gun safe from the vehicle and takes it into police custody for safekeeping. Under the circumstances, the State has not shown that further intrusion into the locked safe was necessary to carry out the government's interest in safeguarding Defendant's property.

{26}    The State also argues that it was necessary to open the safe to protect the police from false claims of lost or stolen property. To the extent police face liability for false claims,[4] we are not persuaded that opening and inventorying the contents of a locked container provides any more protection than inventorying the locked container as a unit, as a false claim can be made that items inside the safe were stolen regardless of whether police opened it or not. *See Ingram*, 914 N.W.2d at 818 ("A party determined to make a false claim may simply allege that the valuables were not included in the written inventory, either through mistake or design."); *see also*

---

[4]While New Mexico courts have referred to this oft-cited justification, *see State v. Byrom*, 2018-NMCA-016, ¶ 34, 412 P.3d 1109, no prior case has examined whether and how the police may be subject to a tort suit based on negligent loss or theft of a defendant's property while it is in police custody. For example, it remains an open question whether the New Mexico Tort Claims Act, NMSA 1978, § 41-4-12 (2020), waives immunity for such a claim. *See Mozzetti*, 484 P.2d at 89-90 (stating that "[t]he contention that the police inventory search is necessary to protect the police . . . from tort claims is even less convincing" because "the police are not liable for ordinary negligence in handling automobile contents"). Because the parties have not briefed the matter, we do not explore it further here.

*Bertine*, 479 U.S. at 383 (Marshall, J., dissenting) ("[I]nventories are not a completely effective means of discouraging false claims, since there remains the possibility of accompanying such claims with an assertion that an item was stolen prior to the inventory or was intentionally omitted from the police records." (alteration, internal quotation marks, and citation omitted)). As the Iowa Supreme Court noted, sealing and storing containers "would provide at least as much protection to the remote threat as a warrantless inventory search of containers." *Ingram*, 914 N.W.2d at 818.

{27} The police department policy involved in this case further undermines any argument that it was necessary to open the safe here. The policy prohibited opening locked containers by force, meaning that if Defendant had not had the key with him, the officer would have been able to do no more than remove the gun safe from the vehicle and inventory it as a unit. In essence, the policy recognizes that the legitimate purposes of the inventory search can be fully accomplished without opening a locked container, regardless of whether the owner has a key in his possession or not. For all of these reasons, we see little justification for opening the gun safe, particularly in light of Defendant's countervailing privacy interests.

{28} Finally, we note that the State had a reasonable opportunity to seek a warrant if it believed there was a basis for doing so. Defendant was in custody, his truck was impounded, and the gun safe had been removed for safekeeping. To the extent officers believed that probable cause existed to search the locked gun safe, they

could have presented an affidavit to a neutral magistrate and waited to search the container until a warrant was in hand. This course of action not only safeguards the privacy interests of the citizen, it also provides a layer of protection for the fruit of valuable police work.

{29}    In this case, we hold that the warrantless search of Defendant's locked gun safe violated Defendant's right to be free from an unreasonable search under the New Mexico Constitution. As the State has not advanced any other exception to the warrant requirement that would justify opening the locked container, we reverse the district court's denial of Defendant's motion to suppress and hold that all evidence obtained as a result of that search must be suppressed.

**CONCLUSION**

{30}    We reverse the district court's denial of Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

{31}    **IT IS SO ORDERED.**


_____

**MEGAN P. DUFFY, Judge**


**WE CONCUR:**


_____

**ZACHARY A. IVES, Judge**


_____

**SHAMMARA H. HENDERSON, Judge**