The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 28, 2025

**No. A-1-CA-41488**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**VON MARQUEZ a/k/a VON P. MARQUEZ**
**a/k/a VON PAUL MARQUEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Curtis R. Gurley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Senior Solicitor General
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**IVES, Judge.**

{1}     Defendant Von Marquez appeals the district court's denial of his motion to suppress evidence obtained from a warrantless search of his backpack. The district court concluded that the arresting officers conducted a valid inventory search. On appeal, Defendant argues that the district court erred because the State's justification for inventorying the contents of the backpack does not suffice under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. In response, the State focuses on its argument—made for the first time on appeal—that Defendant lacks standing to challenge the search because he denied owning the backpack and because he abandoned the backpack before his arrest by leaving it in an apartment in which he did not reside. The State also argues that even if Defendant had standing, the inventory search was reasonable because of the officers' safety concerns. We conclude that the law does not allow us to rely on a lack of standing to affirm the district court as right for any reason because the State's standing arguments involve factual questions that are not answered by the evidence presented at the suppression hearing and because Defendant lacked an opportunity to present evidence regarding standing as a consequence of the State's choice not to raise the issue in the district court. We also conclude that the warrantless inventory search of Defendant's backpack was invalid under the New

Mexico Constitution. We therefore reverse the order denying the motion to suppress and remand for further proceedings consistent with this opinion.

**BACKGROUND**

{2}     On September 9, 2022, an anonymous caller informed the Bloomfield Police Department that Defendant—who had an outstanding arrest warrant for failing to appear in court—was at the Pinos Blancos Apartment Complex wearing jeans, a vest, no shirt, and a backpack. Officer David Gonzales and Sergeant Christian Waltermire searched the apartment complex and spotted Defendant on the balcony of apartment 69. The officers asked the tenant whether they could enter the apartment to search for a fugitive. The tenant initially declined, but when the officers said that they would obtain a search warrant, the tenant agreed that they could enter. Upon entering the apartment, a small child and an adult male—not Defendant— came out of the bathroom and were told to leave the apartment. Defendant eventually came out of a back room and was arrested.

{3}     As Officer Gonzales escorted Defendant to the patrol vehicle, Sergeant Waltermire returned to the apartment to search for the backpack described by the anonymous caller. Sergeant Waltermire told the tenant that the officers needed to retrieve Defendant's property, reentered the apartment, and eventually found a backpack in the closet of a child's room—the same room that Defendant had exited during the initial search. It is undisputed that the backpack was zipped shut, and the

tenant said the backpack did not belong to her or her children and "[she] guess[ed]" that it was Defendant's. Police searched the backpack while Defendant was in the back of the patrol vehicle, and they found what they believed to be fentanyl pills and drug paraphernalia. Later, at the police station, Defendant acknowledged that he owned the backpack and its contents, according to the affidavit submitted in support of a search warrant for Defendant's cell phone. The State charged Defendant with trafficking by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006).

{4}     In the affidavit for a warrant to search Defendant's phone, Officer Gonzales described the search of Defendant's backpack as a "search incident to arrest." Defendant moved to suppress the evidence, arguing that the search was not a valid search incident to arrest. In its response, the State conceded that the search was not incident to arrest but argued that it was a valid inventory search. Defendant replied that the search was not a valid inventory search.

{5}     After a hearing, the district court denied Defendant's motion to suppress, concluding, in pertinent part, that "[t]he police were justified in seizing the backpack because it could not safely be left behind in the apartment where [Defendant] was found and arrested, and where small children were located" and that the inventory search was valid because it "served at least two purposes: 1) to shield the police from

accusations of theft or damage to [Defendant's] property, and 2) to protect [Defendant's] property."

{6}    Defendant pleaded guilty to charges brought in multiple cases, including distribution of an imitation controlled substance, contrary to NMSA 1978, Section 30-31A-4 (1983); trafficking by possession with intent to distribute, contrary to Section 30-31-20(A)(3); and possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A), (E) (2021). Defendant reserved his right to appeal the suppression ruling.

**DISCUSSION**

**I.     Lack of Standing Is Not an Appropriate Basis for Affirmance Under the Right for any Reason Doctrine in this Case**

{7}    The State contends that Defendant lacked standing to challenge the search of the backpack because he did not have a reasonable expectation of privacy in the contents of the backpack. *See State v. Sanders*, 2024-NMCA-030, ¶ 10, 545 P.3d 1176. In support of this contention, the State argues that (1) Defendant denies ownership of the backpack and (2) alternatively, Defendant relinquished any privacy interest in the backpack when he "abandoned" the item in a home that was not his. The State concedes that its standing arguments were not presented to the district court and that the district court did not rule on standing, but the State asks us to rely on its appellate standing arguments to affirm the district court under the right for any reason doctrine. We decline to do so because, as we will explain, the doctrine does

4

not apply to the fact-dependent arguments presented by the State for the first time on appeal.

{8}    The doctrine permits affirmance on a basis not relied upon by the district court if the result reached by the district court "was right for any reason, as long as the arguments in favor of affirmance are not fact based such that it would be unfair to entertain them for the first time on appeal without notice to the appellant." *State v. Granville*, 2006-NMCA-098, ¶ 12, 140 N.M. 345, 142 P.3d 933. Application of the doctrine under such circumstances would be unfair to the appellant "because it is improper for an appellate court to engage in fact-finding and because the appellant would have lacked an opportunity to present admissible evidence relating to the fact." *State v. Marquez*, 2023-NMSC-029, ¶ 32, 539 P.3d 303 (text only) (citation omitted). As a consequence, "appellate courts usually apply the [doctrine] to strictly legal questions." *Id.* (alteration, internal quotation marks, and citation omitted).

{9}    These limitations on the applicability of the doctrine preclude us from affirming on the basis of either of the State's standing arguments. We first address the State's argument that Defendant lacks standing to object to the search because he denied ownership of the backpack. The State concedes that the district court did not make factual findings related to Defendant's ownership of the backpack, but contends that two portions of the suppression hearing show that the district court sufficiently considered standing issue. The State points to questioning by

5

Defendant's counsel about the validity of any inventory search and questions by the district court about Defendant's standing to object to *seizure* of the backpack from the tenant's apartment. But the standing issue on appeal relates to the *search* of the backpack, which involves a factual determination about who owns the backpack, *see Sanders*, 2024-NMCA-030, ¶¶ 9-12, and the questions identified by the State did not produce evidence or findings by the district court on that topic. The only pertinent evidence—Officer Gonzales' affidavit used to support a search warrant for Defendant's cell phone—was not introduced into evidence at the suppression hearing, and, even if it had been introduced, that evidence would support the conclusion that Defendant is the owner of the backpack. In Officer Gonzales' affidavit, he stated that Defendant acknowledged that the backpack was his. The suppression hearing was predicated on this fact; the State did not argue lack of ownership or standing at the hearing; and neither Defendant nor the State presented any evidence suggesting that Defendant did not own the backpack. Contrary to the State's argument on appeal, Defendant never denied ownership during the hearing. Because the State did not argue standing in the district court, Defendant had no opportunity in the district court to respond to that argument by, for example, presenting testimony consistent with the testimony in the affidavit submitted by Officer Gonzales. *See Marquez*, 2023-NMSC-029, ¶ 32. We therefore do not apply

6

the right for any reason doctrine to affirm based on the State's argument about ownership.

{10} The State's second standing argument is not viable for very similar reasons. The State argues that Defendant lacks standing because "Defendant objectively abandoned the backpack in an area where he had no residency or other privacy interest."[1] This argument, like its ownership argument, was not raised in the district court and is fact-dependent. *See State v. Celusniak*, 2004-NMCA-070, ¶ 27, 135 N.M. 728, 93 P.3d 10 (concluding that the district court's finding that the defendant's purse had been abandoned was a mixed question of fact and law). Indeed, had the State argued abandonment in the district court, the State would have borne the burden of proving, "by clear, unequivocal and decisive evidence," that Defendant intended to abandon the backpack. *See State v. Guebara*, 1995-NMCA-031, ¶ 11, 119 N.M. 662, 894 P.2d 1018 (internal quotation marks and citation omitted). Because the State did not argue abandonment, the record does not include sufficient evidence to present us with a purely legal question about whether

---

[1]The question of abandonment has been located in two different places in the search and seizure analytical framework: a question of standing or a substantive threshold question under the Fourth Amendment. *See* 1 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 2.6(b) (6th ed. 2024) ("Sometimes the fact of abandonment is relied upon in order to find that a particular defendant was without standing, but more often courts take the position that if certain property is abandoned it is beyond the protections of the Fourth Amendment.") Because the precise location of the question makes no practical difference here and because the parties have discussed abandonment as a standing question, we do the same.

7

Defendant abandoned the backpack and, in any event, Defendant had no chance to present evidence on the topic. *See Marquez*, 2023-NMSC-029, ¶¶ 32, 35. We conclude that the right for any reason doctrine does not apply to the State's abandonment argument.

## II. The Inventory Search Violated the New Mexico Constitution

### A. Standard of Review

{11} When an appeal of a suppression ruling involves "a mixed question of law and fact," *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted), we review "factual matters with deference to the district court's findings if substantial evidence exists to support them," and we review "the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. Because we address only purely legal questions in this appeal, our review is de novo.

### B. The Search of Defendant's Backpack Was Not a Valid Inventory Search

{12} "An inventory search is valid if (1) the police have control or custody of the object of the search; (2) the inventory search is conducted in conformity with established police regulations; and (3) the search is reasonable." *State v. Davis*, 2018-NMSC-001, ¶ 12, 408 P.3d 576. Defendant argues that the State failed to satisfy all three of the requirements. We hold that the third requirement was not met:

the search of the backpack was not reasonable. Because the failure to satisfy this requirement is dispositive, we do not address the first two requirements.[2]

{13} Although courts generally uphold inventory searches as reasonable under the Fourth Amendment if they conform to standardized police procedures, Article II, Section 10 of the New Mexico Constitution affords greater protections largely because of our state's stronger preference for warrants. *See State v. Jim*, 2022-NMCA-022, ¶¶ 9, 18, 508 P.3d 937. New Mexico law's emphasis on warrants therefore requires courts to look beyond standard operating procedures created by law enforcement when determining whether the inventory exception to the warrant requirement applies. *Id.* ¶¶ 19-22. Instead of applying the bright-line rule that compliance with standardized procedures suffices, courts applying Article II, Section 10 must determine whether inventory searches are reasonable by "balancing the need for the search in a particular case against the intrusion upon an individual's privacy interest." *Jim*, 2022-NMCA-022, ¶ 14. This entails "weigh[ing] the governmental and societal interests advanced to justify the intrusion against the constitutionally protected interest of the individual citizen in the privacy of his

---

[2]Concerning the third requirement, Defendant also argues that the officers searched Defendant's backpack for the purpose of investigating a possible crime. *See State v. Ontiveros*, 2024-NMSC-001, ¶ 26, 543 P.3d 1191 ("An inventory search is not reasonable if police acted in bad faith or for the sole purpose of investigating a possible crime."). Because we conclude that the search was unreasonable on other grounds, we do not address this argument.

effects." *Id.* ¶ 22 (alterations, internal quotation marks, and citation omitted). The governmental interests are: "(1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Id.* ¶ 13 (text only) (citation omitted). Because Defendant preserved his state constitutional argument, we analyze the validity of the search under this framework.[3]

{14}    Our analytical path is illuminated by three inventory search precedents decided under our state constitution: *Jim*, *Sanders*, and *State v. Huerta*, ___-NMCA-___, ___ P.3d ___ (A-1-CA-41023, Jan. 29, 2025). In *Jim*, this Court considered the validity of the search of a locked gun safe found during the inventory search of a pickup truck. 2022-NMCA-022, ¶ 1. The state relied on two of the three governmental interests: "protecting [the d]efendant's property and protecting the police from claims of loss or theft." *Id.* ¶ 24 & n.3. Rejecting the state's argument

---

[3]At oral argument the State contended that Defendant did not preserve his state law argument under Article II, Section 10 of the New Mexico Constitution because Defendant did not address the *Jim* factors in his reply or at the suppression hearing. We disagree. "Because it is well-established that Article II, Section 10 provides more protection against unreasonable searches and seizures than the Fourth Amendment, [a d]efendant need only (1) assert the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) show the factual basis needed for the trial court to rule on the issue in order to preserve his claim." *Jim*, 2022-NMCA-022, ¶ 12 (alterations, internal quotation marks, and citation omitted). Defendant preserved his state law claim by citing Article II, Section 10 in his motion to suppress and his reply to the State's response, and developing the factual basis for his claim in his motion and reply, as well as at the suppression hearing.

regarding the need to protect the defendant's property, the *Jim* Court reasoned that the locked gun safe "was adequately protected by the nature of the container and the existence of the lock," and that the state failed to show how "further intrusion into the locked safe was necessary to carry out the government's interest in safeguarding [the d]efendant's property." *Id.* ¶ 25. As for the need to protect police from liability, this Court was "not persuaded that opening and inventorying the contents of a locked container provides any more protection than inventorying the locked container as a unit, as a false claim can be made that items inside the safe were stolen regardless of whether police opened it or not." *Id.* ¶ 26. The *Jim* Court recognized that "sealing and storing containers would provide at least as much protection to the remote threat as a warrantless inventory search of containers." *Id.* (text only) (citation omitted).

{15}     In *Sanders*, this Court extended *Jim*'s protections to a black, opaque zipped bag found during an inventory search of the defendant's vehicle.[4] *See Sanders*,

---

[4]The State attempts to distinguish Defendant's case from *Jim* and *Sanders* by arguing that Defendant's case involves property left by Defendant in a child's bedroom *in a home* and therefore "does not involve heightened privacy interests associated *with one's interest in his or her automobile*." (Emphasis added.) The State appears to misunderstand the departure from federal law involved in *Jim*. As Defendant notes, *Jim* recognized that the lesser privacy interest in the contents of a car that is a feature of federal law is not a feature of our state's law under Article II, Section 10, *see Jim*, 2022-NMCA-022, ¶¶ 19-21, but *Jim* is not based on the premise that New Mexico law affords greater protection to privacy in the context of cars than it does in the context of homes. New Mexico law does no such thing. The premise of *Jim* and its offspring that is critical in this case is that New Mexico law has a stronger preference for warrants than federal law does, and that this stronger

2024-NMCA-030, ¶¶ 4, 23. Just as it had in *Jim*, the state argued in *Sanders* that the government's interest in protecting the defendant's property and protecting officers from liability outweighed the defendant's privacy interest in the bag. *Id.* ¶ 17. The *Sanders* Court held that although the gun case in *Jim* was locked, and the bag in question was not locked, the defendant still had a reasonable expectation of privacy because "[t]he black zipper bag was opaque and zipped closed, therefore excluding others from its contents unless unzipped." 2024-NMCA-030, ¶ 19. This Court reasoned that the possibility of the defendant's property being damaged "bec[ame] exceedingly unlikely when the officers took [the d]efendant's vehicle and property into police custody for safekeeping." *Id.* ¶ 21 (internal quotation marks and citation omitted). Therefore, "the officers sufficiently protected [the d]efendant's property without needing to search the zipped bag." *Id.* As for the need to protect the police from liability, *Sanders* followed the path lit by *Jim*: opening the zipped container did not provide any greater protection than inventorying the item as a unit. *Sanders*, 2024-NMCA-030, ¶ 22.

{16}     Finally, in *Huerta*, this Court reaffirmed that "closed, locked, or sealed containers (that obstruct a law enforcement officer's view) found within vehicles during an inventory search generally may not be searched without a warrant or the

---

preference applies to inventory searches. *See id.* ¶ 15; *Huerta*, ___-NMCA-___, ¶ 19.

12

existence of circumstances otherwise justifying warrantless entry into the container." *Huerta*, \_\_\_-NMCA-\_\_\_, ¶ 26. The container at issue in *Huerta* was "a cylindrical, cardboard Fritos corn chip canister, closed with a removable, translucent, gray in color plastic lid." *Id.* ¶¶ 4-5. The investigating deputy opened the plastic lid and— becoming suspicious of its contents and seeing what appeared to be a false bottom— "the deputy tore it apart and discovered another plastic container with a screwed-on lid that had been hidden under the false bottom." *Id.* ¶ 6. Applying *Jim* and *Sanders*, the *Huerta* Court was not persuaded that the interests in protecting the defendant's property or protecting police from liability were better served by opening the canister than by inventorying it as a unit. *Id.* ¶¶ 23-24. As to the interest in protecting officer safety, this Court did not believe that opening the canister furthered this interest because the arrestee no longer had access to the canister and because there was no basis for concluding that opening the canister was safer than leaving it closed. *Id.* ¶ 25.

{17}    These precedents point the way to our holding that none of the three government interests justify the warrantless inventory search of Defendant's backpack. The first two interests—protection of property and officer liability—were relied upon by the district court but have not been relied upon by the State on appeal. And, as we will explain, neither of these interests justifies the search; the district court's reliance on them was misplaced under *Jim*, *Sanders*, and *Huerta*. The State

relies exclusively on the third interest: safety. But the State has not provided us with any basis for concluding that opening the backpack was reasonably necessary to protect the police from potential danger—that is, that opening and searching the backpack was safer than leaving it closed. We discuss each interest in turn.

{18} First, Defendant's property was adequately protected from damage or loss by inventorying the closed backpack as a unit. *See Jim*, 2022-NMCA-022, ¶ 25. Here, "the nature of the container" protected the belongings within the container. *See id.* The backpack had double zippers, and it is undisputed that it was zipped closed when found by the police. Because this adequately contained and protected the backpack's contents, when the police took Defendant's backpack into police custody, the possibility of its contents being damaged "bec[ame] exceedingly unlikely." *Sanders*, 2024-NMCA-030, ¶ 21 (internal quotation marks and citation omitted). There is no evidence in the record to support the conclusion that "further intrusion . . . was necessary to carry out the government's interest in safeguarding [the d]efendant's property." *Jim*, 2022-NMCA-022, ¶ 25.

{19} Second, the officers' desire to protect themselves "against claims or disputes over lost or stolen property," *see id.* ¶ 13 (internal quotation marks and citation omitted), did not outweigh Defendant's privacy interests in his backpack. Defendant argues that "[l]ike the bag in *Sanders*, there is no difference with respect to police liability between inventorying the backpack as a unit and opening the backpack to

search the contents." We agree. Sealing and storing the zipped-up backpack would have provided at least as much protection against the remote threat of a claim of lost or stolen property. *See Huerta*, \_\_\_-NMCA-\_\_\_, ¶ 24; *Sanders*, 2024-NMCA-030, ¶ 22; *Jim*, 2022-NMCA-022, ¶ 26. Nothing in the record establishes, or even suggests, that the warrantless search of the backpack provided greater protection.

{20}   Third and finally, we address the only government interest relied upon by the State on appeal: safety from physical harm. The State argues that "*Jim* and *Sanders* do not foreclose the possibility of a constitutionally valid inventory search where there is an articulable safety concern regarding a closed container or bag."[5] With this we agree. It is true—and important—that Article II, Section 10 precedents recognize that a warrantless inventory search could be justified if opening a container "was reasonably necessary" to protect the police from potential danger. *See Jim*, 2022-NMCA-022, ¶¶ 13, 24. In making this inquiry, this Court has considered whether opening a seized container would be safer for the police than leaving the container closed. *See Huerta*, \_\_\_-NMCA-\_\_\_, ¶ 25. In this case the State has not provided us with any reason to conclude that opening the backpack was safer for the police than leaving it closed. Indeed, the State candidly acknowledged during oral argument that

---

[5]The State also notes that "as it turns out, the bag contained a dangerous substance, fentanyl." This fact is not relevant to the questions presented in this appeal because "an unreasonable search . . . cannot be made reasonable by what is discovered" during the search. *Cf. State v. Baca*, 1974-NMCA-098, ¶ 6, 87 N.M. 12, 528 P.2d 656 (considering exigent circumstances).

15

the record is devoid of evidence that there was any threat to police safety. Instead, the State asserted that "the unknown contents" of the backpack are what "create[] the danger." But this danger is theoretical, and it therefore does not suffice to establish a safety risk that justifies a warrantless search under Article II, Section 10.[6] *Cf. State v. Arredondo*, 1997-NMCA-081, ¶ 17, 123 N.M. 628, 944 P.2d 276 (recognizing that whether a warrantless search for weapons is reasonable under Article II, Section 10 depends on whether the facts known to the officers established a particularized showing of danger, not on whether there is a "theoretical basis that harm could occur") (text only) (citation omitted), *overruled on other grounds by State v. Steinzig*, 1999-NMCA-107, ¶ 29, 127 N.M. 752, 987 P.2d 409.

{21} For these reasons, we hold, under Article II, Section 10, that the State did not justify the warrantless search by establishing that any government interest outweighed Defendant's privacy interest in the contents of his closed backpack.

**CONCLUSION**

{22} We reverse the order denying Defendant's motion to suppress, and we remand this case to the district court for proceedings consistent with this opinion.

---

[6]The State invokes the safety of the children who lived in the apartment, relying on Sergeant Waltermire's testimony that the children might have found something in the backpack that would "potentially be harmful to them." However, at the time of the search this concern about the contents of the backpack was purely speculative, and, in any event, any threat to the children vanished when the officers removed the unopened backpack from the apartment.

{23}    **IT IS SO ORDERED.**


_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**


_____
**JACQUELINE R. MEDINA, Chief Judge**


_____
**KATHERINE A. WRAY, Judge**